**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JOSE LUIS PADILLA POSADAS,**<br><br>Petitioner,<br><br>v.<br><br>**PATRICIA H. HYDE**, Acting Director of U.S. Immigration and Customs Enforcement, Boston Field Office; **TODD LYONS**, Acting Director of U.S. Immigration and Customs Enforcement; **KRISTI NOEM**, Secretary of Homeland Security; **PAMELA BONDI**, U.S.Attorney General; **SIRCE OWEN,** Acting Director, Executive Office for Immigration Review; and **TERESA RILEY,** Chief Immigration Judge, in their official capacities,<br><br>Respondents. | **Case No. 1:26-cv-10276**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

1. Petitioner Jose Luis Padilla Posadas ("Mr. Padilla") is a 22-year-old man from Honduras who has an approved petition for Special Immigrant Juvenile status, a valid grant of deferred action, and is awaiting his opportunity to apply for permanent resident status. He is not removable from the United States. Upon information and belief, he has no criminal charges or convictions. Despite this, in contravention of federal law and the U.S. Constitution, individuals acting as immigration enforcement officers arrested him this morning. He is believed to be in detention in Burlington, Massachusetts.

2. Accordingly, to vindicate Mr. Padilla's statutory and constitutional rights, this Court should grant the instant petition for a writ of habeas corpus. Mr. Padilla asks this Court to find

that his detention without a bond hearing violates his due process rights, and order immediate release or a speedy bond hearing in the alternative.

## JURISDICTION

3. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

5. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

6. Venue is proper because Petitioner was arrested in Gorham, Maine this morning, and upon information and belief, is currently held by ICE in its Burlington, Massachusetts office, which is within the jurisdiction of this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

7. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

8. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most

important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

9. Petitioner Jose Luis Padilla Posadas is a citizen of Honduras with an approved petition for Special Immigrant Juvenile Status ("SIJS") and a grant of deferred action. He has no criminal history. Upon information and belief, Petitioner is currently detained by ICE in Burlington, Massachusetts. He is in the custody, and under the direct control, of Respondents and their agents.

10. Respondent Patricia Hyde is sued in her official capacity as the Acting Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has authority to release him.

11. Respondent Michael Krol is sued in his official capacity as the New England Special Agent in Charge of Homeland Security Investigations. Respondent Krol is a legal custodian of Petitioner and has authority to release him.

12. Respondent Todd Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Petitioner and has authority to release him.

13. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention and custody. Respondent Noem is a legal custodian of Petitioner.

14. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

15. Respondent Sirce Owen is the Acting Director of EOIR. She is being sued in her official capacity. She is also Petitioner's legal custodian.

16. Respondent Teresa Riley is Chief Immigration Judge, and, as such, the highest official within the Immigration Courts. She is being sued in her official capacity. She is also Petitioner's legal custodian.

## STATEMENT OF FACTS

17. Petitioner Jose Luis Padilla Posadas is a 22-year-old citizen of Honduras with an approved petition for Special Immigrant Juvenile Status and a grant of deferred action. He entered the United States in January 2021, at the age of seventeen, qualifying as an unaccompanied alien child ("UAC"). He was detained by the Office of Refugee Resettlement's Division of Unaccompanied Children Operations briefly before being released to live with his brother in Maine. ICE also gave Mr. Padilla copies of a "Warrant for Arrest of Alien" and a "Notice of Custody Determination" indicating that he was detained under 8 U.S.C. § 1226, INA § 236. Ex. 1.

18. Mr. Padilla has been peacefully living and working in Maine since 2021.

19. On or about January 27, 2021, ICE issued Mr. Padilla a Notice to Appear charging him with violations of 8 U.S.C. § 1182(6) and (7) for having entered the United States without proper

documentation, and then a Superseding Notice to Appear on July 20, 2021 with the same allegations.

20. On April 11, 2022, the District Court in Portland, Maine, determined that Mr. Padilla's parents had passed away in Honduras when he was eleven years old; that Mr. Padilla went to live with an uncle, who also passed away; and that there was no one to care for Mr. Padilla in Honduras. Further, the Court found that it was in the best interest of Mr. Padilla to continue living with his brother in Maine.

21. Based on the Portland court's order, Mr. Padilla applied for Special Immigrant Juvenile Status on October 10, 2022. His I-360 petition and deferred action were approved on April 5, 2023. Mr. Padilla received an I-797A Notice of Action, which stated: "USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may be issued an employment authorization document." Ex. 2, I-797A Notice of Action. The notice also stated: "Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS." *Id*. Therefore, Mr. Padilla's deferred action does not expire until April 5, 2027.

22. Mr. Padilla also obtained a work permit based on the deferred action, valid until 2027.

23. Because of the visa backlog impacting SIJS beneficiaries, *see infra*, Mr. Padilla could not immediately apply for lawful permanent resident status after being approved for SIJS, and instead was required to wait until a visa became available to him. Still, he made plans for his future based on his grant of SIJS, his deferred action, and his ability to work lawfully.

24. On January 16, 2024, an immigration judge granted termination of Mr. Padilla's removal proceedings based on *Matter of Coronado-Acevedo,* 28 I&N Dec. 648 (AG 2022), because Mr.

Padilla's I-360 petition was approved and he was simply awaiting the opportunity to apply for permanent resident status.

25. On the morning of January 22, 2026, individuals acting as immigration enforcement officers detained Mr. Padilla in Gorham, Maine, as he was trying to go to work.

26. Upon information and belief, Mr. Padilla is currently in ICE custody in Burlington, Massachusetts.

## LEGAL FRAMEWORK

### SIJS Provides a Pathway to Permanent Status for Certain Vulnerable Young People

27. In 1990, Congress created SIJS to protect vulnerable immigrant children and provide them a pathway to citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the Immigration and Nationality Act ("INA")); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJS, most recently in 2008, through the Trafficking Victims Protection Reauthorization Act, Pub. L. 110-457, § 235(d), 122 Stat. 5044 (2008).

28. To be granted SIJS, youths like Mr. Padilla must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJS designation, as relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on a state juvenile court; who cannot be reunified with one or more parents because of

abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

29. Crucially, a noncitizen youth is eligible for SIJS only if he or she is "present in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added). This requirement makes perfect sense, considering that SIJS is predicated on a state court finding that the youth cannot be safely reunited with their parent(s), nor safely sent back to their country of origin. The design of this program, then, "show[s] a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (abrogated on other grounds).

30. Youth may apply for SIJS upon receipt of a state court order finding they cannot be safely reunited with parent(s) nor safely sent back to their country of origin. The application process includes submitting a Form I-360 SIJS Petition to USCIS, along with the predicate state court order and other supporting evidence. 8 C.F.R.§ 204.11(b). USCIS then considers the application and supporting documentation to determine whether to exercise its statutory "consent function" to approve the petition. 8 U.S.C. § 1101(a)(27)(J)(iii). By exercising its statutory consent function to grant SIJS, the agency acknowledges and adopts the state court's determinations, including that the child's return to their country of origin would be contrary to their best interests. 8 U.S.C. § 1101(a)(27)(J)(iii).

31. SIJS does not expire and may be revoked *only* upon a finding of "good and sufficient cause" by the Secretary of Homeland Security. 8 U.S.C. § 1155; 8 C.F.R. § 205.2. According to USCIS regulations, such revocation requires notice to the youth in question, who must be permitted the opportunity to submit evidence opposing the revocation and to appeal an adverse decision. 8 C.F.R. § 205.2. If status is ultimately revoked, the youth is further entitled to notice

and the opportunity to appeal the decision. 8 C.F.R. § 205.2(c) & (d). Revocation of a SIJS petition may only be performed by a USCIS officer authorized to approve such petition in the first instance. 8 C.F.R. § 205.2(a).

32. The main benefit of SIJS—and indeed, its core purpose—is that it confers on vulnerable young people like Mr. Padilla the right to seek LPR status while remaining in the United States, through a process called adjustment of status. *See* 8 U.S.C. 1255(h).

33. To facilitate this process, Congress removed numerous barriers to adjustment of status for SIJS beneficiaries through amendments to the SIJS provisions in 1991 and again in 2008. For example, SIJS youth are "deemed . . . to have been paroled into the United States" for the purposes of adjustment of status. 8 U.S.C. § 1255(h)(1). Further, Congress exempted SIJS youth from many common inadmissibility grounds and created a generous waiver of many of the non-exempted inadmissibility grounds. 8 U.S.C. § 1255(h)(2). And, Congress explicitly provided that certain grounds for removal "shall not apply to a special immigrant described in section 1101(a)(27)(J) of this title [the SIJS statute] based upon circumstances that existed before the date the [noncitizen] was provided such special immigrant status." 8 U.S.C. § 1227(c).

34. Although SIJS renders youth eligible to apply for adjustment, they can only do so when a visa is immediately available to them. 8 U.S.C. § 1255(h). However, there is an annual limit on visas available to SIJS beneficiaries. 8 U.S.C. § 1153(b)(4). And since 2016, the number of SIJS beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card.

35. Despite the immediate unavailability of visas, waitlisted SIJS beneficiaries are the same vulnerable young people that the SIJS statute was designed to protect. The fact that no visa is

currently available because a numerical limit has been reached changes nothing about their eligibility determination by USCIS, or Congress's intent that they be afforded a pathway to LPR status and, eventually, citizenship. These are the same individuals whom state courts have determined cannot safely be reunited with their parent(s) or returned to their home country.

36. Taken together, the structure of the SIJS program—including the requirement that recipients remain in the United States to move forward in the process, the grant of parole for the purpose of adjustment, and the waiver of grounds of inadmissibility and removability—evinces Congress' intent that SIJS recipients remain safely in the United States until they can adjust to become LPRs.

**Deferred Action Gives Meaning to Congress' Intent That SIJS Beneficiaries Be Protected**

37. In March 2022, to address the SIJS visa backlog, USCIS announced that all young people granted SIJS would be considered for a discretionary grant of deferred action, meaning that they would be protected from deportation while waiting for a visa to become available. In enacting this policy, USCIS itself acknowledged that "Congress likely did not envision that SIJ petitioners would have to wait years before a visa became available."[1] Persons granted deferred action are shielded from deportation and are eligible to apply for employment authorization under 8 C.F.R. § 274a.12(c)(14).

---

[1] USCIS, Policy Alert PA-2022-10 at 1 (Mar. 7, 2022), available at: https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf ("2022 Policy Alert")*; see also* USCIS, Training regarding SIJ Deferred Action Background, available at: https://www.ilrc.org/sites/default/files/2025-09/FOIA%20Results%20on%20SIJS%20Deferred%20Action%20Policy.pdf at 11–12.

38. Importantly, "USCIS has the sole authority to grant and terminate deferred action for noncitizens with SIJS classification."[2] And, generally, USCIS may only terminate deferred action "if the SIJ-classified individual was not eligible at the time of the initial grant of deferred action, the SIJ Form I-360 is revoked, or if they are no longer eligible based on new information." *Id*.

39. In June 2025, USCIS rescinded the SIJS deferred action policy, deciding to no longer consider granting deferred action to SIJS youth waiting to apply for a green card. However, this policy change has *no impact* on SIJS beneficiaries who already received deferred action. USCIS Policy Alert, PA-2025-07, "Special Immigrant Juvenile Classification and Deferred Action" (June 6, 2025), available at: 20250606-SIJDeferredAction.pdf (stating that noncitizen "with current deferred action based on their SIJ classification will generally retain this deferred action . . . until the current validity periods expire."). Further, the Eastern District of New York has granted a stay of the rescission of this policy. *A.C.R. et al. v. Noem et al.,* 1:25-cv-03962-EK-TAM (E.D.N.Y., Nov. 19, 2025).

40. Deferred action is an act of prosecutorial discretion that defers efforts to deport a noncitizen from the United States for a certain period of time. In the case of SIJS recipients awaiting visas, USCIS granted deferred action for a period of four years. *See id*.

41. Deferred action does not confer lawful status and does not prevent an immigration judge from issuing a removal order. However, unless and until terminated, a grant of deferred action prevents immigration authorities from physically removing a noncitizen from the United States. USCIS Policy Manual, Vol. 6: Immigrants, Part J: Special Immigration Juveniles, Ch. 4:

---

[2] USCIS Memo re: Special Immigrant Juvenile (SIJ) Deferred Action, June 26, 2023, available at: https://www.ilrc.org/sites/default/files/2025-09/FOIA%20Results%20on%20SIJS%20Deferred%20Action%20Policy.pdf at 131–132.

Adjudication; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AADC*").

42. Once deferred action is granted, fundamental procedural due process protections attach to the recipient, such as the right to notice and an opportunity to contest the revocation of deferred action. *See Maldonado v. Noem*, No. 4:25-CV-2541, 2025 WL 1593133, at *2 (S.D. Tex. June 5, 2025) (finding that Petitioner was "likely to succeed on his Due Process claim" because he was denied "notice, a hearing, or any opportunity to contest the revocation of his deferred action").

**No Statute Subjects Mr. Padilla to Mandatory Detention Without a Bond Hearing.**

43. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1) for several reasons, including because DHS has placed Petitioner into removal proceedings under 8 U.S.C. § 1229a and because Petitioner does not meet the criteria for Expedited Removal. *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025), stay upheld in part by *Make the Road New York v. Noem*, No. 25-5320, 2025 WL 3563313 (Nov. 22, 2025).

44. Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), including because, as a person already present in the United States, Petitioner is not presently "seeking admission" to the United States. *See Choglla Chafla*, No. 25-cv-437-SDN, 2025 WL 2688541, at *2-9 (D. Me. Sept. 22, 2025); *Aguiriano v. Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *1, 8-13 (D. Mass. Aug. 19, 2025).

45. Petitioner was not, at the time of arrest, paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), and therefore Petitioner could not "be returned" under that provision to mandatory custody under 8 U.S.C. § 1225(b) or any other form of custody. Petitioner is not subject to mandatory detention under § 1225 for this reason as well.

46. Instead, as a person arrested inside the United States, held in civil immigration detention, and placed into removal proceedings under 8 U.S.C. § 1229a, Petitioner is subject to detention, if at all, pursuant to 8 U.S.C. § 1226. *See Choglla Chafla*, 2025 WL 2688541, at *2-9 (collecting cases); *Aguiriano*, 2025 WL 2403827, at *1, 8-13 (collecting cases).

47. Petitioner is not lawfully subject to mandatory detention under 8 U.S.C. § 1226(c), including because he has not been convicted of any crime that triggers such detention. *See Demore v. Kim*, 538 U.S. 510, 513-14, 531 (2003) (allowing mandatory detention under § 1226(c) for brief detention of persons convicted of certain crimes and who concede removability).

48. Accordingly, Petitioner is subject to detention, if at all, under 8 U.S.C. § 1226(a).

49. As a person detained under 8 U.S.C. § 1226(a), Petitioner must, upon his request, receive a custody redetermination hearing (colloquially called a "bond hearing") with strong procedural protections. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland,* 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment); 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

50. Petitioner's right to receive a custody redetermination under 8 U.S.C. § 1226(a) has been confirmed by class-wide declaratory relief issued by United States District Judge Patti B. Saris of the District of Massachusetts in *Guerrero Orellana v. Moniz et al*, No. 25-cv-12664 (D. Mass.).

51. On October 30, 2025, Judge Saris certified a class in a civil complaint against, among others, Respondents David Wesling, Todd Lyons, Kristi Noem, Sirce Owen, and Pamela Bondi.

52. Petitioner is a member of the *Guerrero Orellana* class. *Guerrero Orellana v. Moniz*, --- F. Supp. ---, 2025 WL 3033769, at *14 (D. Mass. Oct. 30, 2025) (defining the class); *see also*

*Guerrero Orellana v. Moniz*, --- F. Supp. 3d --, 2025 WL 3687757, at *10 (D. Mass. Dec. 19, 2025) (modifying the class).

53. On December 19, 2025, the Guerrero Orellana Court issued the following Declaratory Judgment:

> The Court declares that the members of the certified class are not subject to detention under 8 U.S.C. § 1225(b)(2). Defendants' policy of subjecting members of the certified class to detention under 8 U.S.C. § 1225(b)(2)(A) without consideration for bond and a custody redetermination (i.e., bond) hearing is unlawful and violates the Immigration and Nationality Act and its regulations. The members of the certified class are subject to detention under 8 U.S.C. § 1226(a), including access to consideration for release on bond and/or conditions before immigration officers and Immigration Judges. After joining the class, the member of the certified class shall remain subject to this order notwithstanding any subsequent change in their location, facility of detention, or venue of immigration proceeding.

*Guerrero Orellana,* 2025 WL 3687757, at *10.

54. Mr. Padilla has submitted a request for custody redetermination with the immigration court in Chelmsford, Massachusetts, but no hearing has yet been scheduled.

55. However, on September 5, 2025, in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals issued a decision which purports to require the Immigration Court to unlawfully deny a bond hearing to all persons such as Petitioner.

56. Further, on January 13, 2026, Chief Immigration Judge Teresa L. Riley sent an email to all Immigration Judges in the country instructing them not to give effect to class-wide declarations like the declaration issued by the Court in *Guerrero Orellana*. *See* Request for Status Conference, *Guerrero-Orellana v. Moniz*, No. 25-12664-PBS (D. Mass. Jan. 16, 2026). Chief Judge Riley's email stated: “Maldonado Bautista [the final declaration in the national bond hearing class action in California] is not a nationwide injunction and does not purport to vacate, stay, or enjoin *Yajure Hurtado*. Therefore, *Yajure Hurtado* remains binding precedent on agency adjudicators. For clarification, declaratory judgments differ from injunctions in that the former

clarifies parties' legal rights and relationships without ordering specific action, while the latter is a court order compelling a party to do or stop doing a specific act. A declaratory judgment is not an equitable remedy and does not, by itself, have the effect of compelling specific action by a party." *Id.*

57. Since January 13, 2026, observers at the Chelmsford Immigration Court have noted that some Immigration Judges are systematically denying bond hearings to individuals set for hearings who asserted membership in the Guerrero Orellana class, following the reasoning outlined in Chief Immigration Judge Riley's email. *Id*.

58. The responsible administrative agency has therefore predetermined that Petitioner will be denied a bond hearing.

59. Petitioner is being irreparably harmed by his ongoing unlawful detention without a bond hearing. *See Chiliquinga Yumbillo v. Stamper,* No. 25-cv-479-SDN, 2025 WL 2783642, at *3-4 (D. Me. Sept. 30, 2025) (no exhaustion requirement because "many months of potentially unlawful detention" constitutes "irreparable harm"); *Aguiriano*, 2025 WL 2403827, at *6-8 (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'").

60. The Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims would be futile. *See Flores-Powell*, 677 F. Supp.

2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute).

61. There is no statutory requirement for Petitioner to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not required by statute in this context.").

62. Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where statutory exhaustion is not required, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of 8 U.S.C. § 1226(a) and Associated Regulations
### (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))

63. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

64. Under § 1226(a) and its associated regulations, Petitioner is entitled to a bond hearing. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

65. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

66. Petitioner's continuing detention is therefore unlawful.

### COUNT TWO
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))

67. Because Petitioner is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that Petitioner receive a bond hearing with strong

procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

68. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

69. Petitioner's continuing detention is therefore unlawful.

**COUNT THREE**
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide an Individualized Hearing for Domestic Civil Detention)**

70. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

71. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V.

72. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

73. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

74. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

75. Petitioner was arrested inside the United States and is being held without being provided any individualized detention hearing.

76. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

**COUNT FOUR**
**Violation of Fifth Amendment Right to Due Process**
**(Substantive Due Process)**

77. Because Petitioner is not being provided a bond hearing, the Government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

78. Petitioner's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the District of Massachusetts, and shall be provided access to counsel;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted, within three days;

(4) Order that Petitioner be released from detention during the pendency of his habeas proceedings under the Court's inherent Article III authority;

(5) Declare that Petitioner's detention is unlawful;

(6) Issue a Writ of Habeas Corpus ordering Respondents

a. to immediately release Petitioner from detention, or, if at the time of the habeas hearing the Court has already ordered Petitioner released under its inherent Article III authority, not to re-detain Petitioner, or

b. in the alternative, to provide Petitioner an individualized bond hearing before an Immigration Judge on danger to the community and flight risk under 8 U.S.C. § 1226(a) and *Hernandez-Lara*, at a time and in a manner that places Petitioner in the same position he would be if not for the Respondents' unlawful conduct, and, if the Immigration Judge grants bond, to immediately accept payment of the bond and release Petitioner from detention.

(7) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(8) Grant any further relief this Court deems just and proper.

Dated: January 22, 2026

Respectfully submitted,
Attorney for Petitioner,

/s/ Stephanie E.Y. Marzouk
Stephanie E.Y. Marzouk MA BBO#683291*
Marzouk Law LLC

2464 Massachusetts Ave Ste 317
Cambridge, MA 02140
Tel: 617-674-2112
Email: sym@marzouklaw.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Jose Luis Padilla Posadas, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 22nd day of January, 2026.

s/*Stephanie E.Y. Marzouk*
Stephanie E.Y. Marzouk