UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE LUIS PADILLA POSADAS,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE, *et al.*,<br><br>Respondents. | No. 1:26-cv-10276-ADB |

**RESPONSE TO SHOW CAUSE ORDER**
**REGARDING FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT (Doc. No. 8)**

The Court should not award fees and costs to Petitioner Jose Luis Padilla Posadas under the Equal Access to Justice Act ("EAJA"). For one, habeas petitions do not fall within EAJA's waiver of sovereign immunity, which pertains only to "civil action[s]." 28 U.S.C. § 2412(d)(1)(A). Moreover, Respondents were "substantially justified" in taking the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *See id.*; *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026) (holding that an "applicant for admission" arrested within the United States, who "has not showed himself to be 'clearly and beyond a doubt entitled to be admitted[,]'" is subject to mandatory detention under § 1225(b)(2)(A)).

## I. BACKGROUND

### A. The Petition

Petitioner alleged that he "is a citizen of Honduras" who "entered the United States in January 2021, at the age of seventeen, qualifying as an unaccompanied alien child[.]" Petition for Writ of Habeas Corpus (Jan. 22, 2026), Doc. No. 1, ¶ 17 ("Pet."). Petitioner "was detained by the Office of Refugee Resettlement's Division of Unaccompanied Children Operations briefly

before being released to live with his brother in Maine." *Id.* U.S. Immigration and Customs Enforcement ("ICE") gave Petitioner "copies of a 'Warrant for Arrest of Alien' and a 'Notice of Custody Determination' indicating that he was detained under 8 U.S.C. § 1226[.]" *Id.*

Thereafter, a state court in Maine determined "that there was no one to care for [Petitioner] in Honduras" and that "it was in the best interest of [Petitioner] to continue living with his brother in Maine." *Id.* ¶ 20. Based on the state court's order, Petitioner applied for Special Immigrant Juvenile Status ['SIJ status'] on October 10, 2022[,]" and his "I-360 petition and deferred action were approved on April 5, 2023." *Id.* ¶ 21. Petitioner alleged that his "deferred action [did] not expire until April 5, 2027." *Id.*

Petitioner alleged that he "has been peacefully living and working in Maine since 2021." *Id.* ¶ 18. And, on January 16, 2024, "an immigration judge granted termination of [Petitioner's] removal proceedings . . . because [Petitioner's] I-360 petition was approved and he was simply awaiting the opportunity to apply for permanent resident status." *Id.* ¶ 24.

Petitioner further alleged that immigration authorities arrested him in Gorham, Maine, on January 22, 2026, as Petitioner "was trying to go to work." *Id.* ¶ 25. His habeas petition asserted four claims challenging detention. First, Petitioner claimed that he was detained under 8 U.S.C. § 1226(a) and thus entitled to a bond hearing. *Id.* ¶¶ 63–66. Petitioner's second and third claims asserted that his detention without a bond hearing violated his right to procedural due process. *Id.* ¶¶ 67–76. Finally, Petitioner claimed that his detention violated his substantive due process rights. *Id.* ¶¶ 77–78. Petitioner sought immediate release or a bond hearing, as well as EAJA fees and costs. *Id.* ¶ 2 & Prayer for Relief.

### B. Response to the Petition

In response to the Petition, Respondents conceded "that the legal issues presented in this Petition are similar to those recently addressed by this Court in *Morales v. Plymouth County Correctional Facility*." Response to Habeas Pet. (Jan. 30, 2026), Doc. No. 7 at 1. In *Morales*, this Court held that "the detention of noncitizens, such as Petitioner, who are arrested and detained within the United States, is governed by 8 U.S.C. § 1226(a) and that Petitioner is thus entitled to a bond hearing." Electronic Order, *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602- ADB (D. Mass. Sept. 30, 2025), Doc. No. 15. Here, Respondents conceded that, if "the Court follow[ed] its reasoning in *Morales*, it would reach the same result" in this case. Response to Habeas Pet. (Jan. 30, 2026), Doc. No. 7 at 1. Thus, Respondents submitted "that the Court may resolve this Petition without further briefing or oral argument." *Id*.

### C. The Court's Order

In ruling on the Petition, the Court found no "reason to deviate from its prior analysis" in *Morales* and thus concluded that "Petitioner is subject to 8 U.S.C. § 1226's discretionary detention framework and, accordingly, entitled to a bond hearing." Electronic Order (Feb. 2, 2026), Doc. No. 8. The Court ordered that Petitioner receive a bond hearing by February 12, 2026, and enjoined Respondents "from denying Petitioner bond on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2)."[1] *Id*. The Court further ordered that Respondents show cause

[1] Petitioner subsequently received a bond hearing on February 5, 2026, and Petitioner was released on February 10, 2026. Status Report (Feb. 11, 2026), Doc. No. 12 at 1.

"why Petitioner is not entitled to an award of reasonable fees and costs as a 'prevailing party' under" EAJA.[2] *Id.*

## II. LEGAL STANDARD

"As a general principle, each party before the court is usually responsible for its own attorney's fees." *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023). "The EAJA is an exception to this traditional 'American rule.'" *Id.* EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).[3] "The statute's purpose is 'to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" *Michel*, 68 F.4th at 78 (quoting *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009)). "Not only is the EAJA a fee shifting statute, but it is also a waiver

[2] After the Court ordered a bond hearing and ordered briefing on EAJA fees, Petitioner filed an amended habeas petition. Am. Pet. for Writ of Habeas Corpus (Feb. 4, 2026), Doc. No. 9 ("Am. Pet."). The first four counts of the Amended Petition are largely the same as those in the original Petition, and they challenge Petitioner's detention without a bond hearing. *Compare* Am. Pet., Doc. No. 1, ¶¶ 65–84 *with* Pet., Doc. No. 1, ¶¶ 63–78. However, Petitioner now has received a bond hearing and been released from custody, so those four claims appear moot.

The Amended Petition also includes a new challenge to revocation of Petitioner's deferred action, Am. Pet, Doc. No. 9, ¶¶ 80–81, 86–90, & Prayer for Relief, but that challenge likely does not sound in habeas. *See, e.g.*, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (explaining that one cannot use habeas to obtain an "opportunity to remain lawfully in the United States"). The Court has not resolved the Amended Petition or ordered that Respondents respond to it, but Respondents will respond to the Amended Petition more fully if the Court would like them to do so.

[3] Respondents do not dispute that Petitioner is a "prevailing party" under § 2412(d)(1)(A).

of the government's sovereign immunity 'and so must be construed strictly in favor of the government.'" *Id*. (quoting *Aronov*, 562 F.3d at 88).

## III. ARGUMENT

### A. EAJA Does Not Waive Sovereign Immunity in Habeas Cases Challenging Immigration Detention

This Court's jurisdiction to grant a fee award exists only if Congress has waived sovereign immunity for EAJA awards stemming from habeas actions. The "United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 48 (2024). And only Congress can waive the United States' sovereign immunity. *Id*.

The Supreme Court has "said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Thus, "a waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Kirtz*, 601 U.S. at 49 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000)). Whether Congress has waived sovereign immunity "trains on statutory text rather than legislative history." *Id.*; *see also Cooper*, 566 U.S. at 290 ("Legislative history cannot supply a waiver that is not clearly evident from the language of the statute.").

"Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Cooper*, 566 U.S. at 290 (citations omitted). "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id*. at 290–91.

Here, EAJA waives sovereign immunity only for a limited set of claims, in that it applies only to "any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A). And the term "civil action" is ambiguous as to whether it encompasses habeas petitions. The Supreme Court has recognized that, even though habeas petitions are often categorized as civil for general purposes, "the label is gross and inexact." *Harris v. Nelson*, 394 U.S. 286, 293–94 (1969). Habeas proceedings are instead "unique." *Id.* at 294. Indeed, the problems presented in habeas proceedings "are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure[.]" *Id*. at 300 n.7.

Accordingly, the Supreme Court has refused to construe the statutory phrase "civil action" as invariably encompassing habeas proceedings. *See Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) ("Though habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions."); *Stafford v. Briggs*, 444 U.S. 527, 542–43 (1980) (recognizing that *Schlanger* rejected an "overbroad interpretation" of "the phrase 'civil action'" that would have encompassed habeas proceedings); *Obando-Segura v. Garland*, 999 F.3d 190, 196 (4th Cir. 2021) (noting that the Supreme Court in *Schlanger* "found that a habeas proceeding seeking release from civil detention was not a 'civil action'").

Congress enacted EAJA 21 years after *Harris* and nine years after *Schlanger*. In passing EAJA, Congress adopted statutory language that used the same phrase—"civil action"—the Court had already held did *not* encompass habeas petitions. Given that courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Merck & Co. v.*

*Reynolds*, 559 U.S. 633, 648 (2010), Congress presumptively intended to adopt *Schlanger*'s construction of that term as excluding habeas petitions.[4]

Although the First Circuit has not addressed whether Congress waived sovereign immunity for EAJA awards stemming from habeas actions,[5] other circuit courts have held that EAJA does not apply to habeas actions. For example, the Fourth Circuit has held that EAJA does not apply to "habeas proceedings seeking release from civil detention." *Obando-Seguro*, 999 F.3d at 191. The court cited the Supreme Court's observation that "the civil label, as applied to applications seeking the writ of habeas corpus, is 'gross and inexact,' as habeas corpus proceedings are 'unique' and occupy a special place of their own in our system." *Id*. at 192–93 (quoting *Harris*, 394 U.S. at 293–94). Ultimately, the Fourth Circuit concluded that "the nature of habeas corpus proceedings makes it ambiguous as to whether habeas proceedings fall within" EAJA's reference to "any civil action." *Id*. at 193. And since courts "construe ambiguous waivers of sovereign immunity narrowly," the Fourt Circuit held that "any civil action" excludes habeas proceedings. *Id*.

The Fifth Circuit reached the same result, expressly agreeing with the Fourth Circuit. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Fifth Circuit explained that "[s]ince 'a habeas corpus proceeding is neither a wholly criminal nor a wholly civil action, but rather a hybrid action that is unique, a category unto itself[,]' it is not purely a civil action, and the EAJA

[4] Admittedly, the Supreme Court's jurisprudence also has referred to habeas proceedings as civil. *See, e.g.*, *Banister v. Davis*, 590 U.S. 504, 507 (2020); *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 (1978).

[5] To be sure, the First Circuit has considered (and denied) a claim for EAJA fees resulting from a habeas proceeding, but without addressing whether Congress waived sovereign immunity for such a claim in the first place. *See generally Saysana* v. *Gillen*, 614 F.3d 1 (1st Cir. 2010).

does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Id.* (quoting *O'Brien v. Moore*, 395 F.3d 499, 505, (4th Cir. 2005)).

To be sure, the Second Circuit has held that EAJA does apply to habeas petitions, but it did so by resorting improperly to "the legislative history of EAJA" to resolve admitted "ambiguity of the term 'civil action[.]'" *Vacchio v. Ashcroft*, 404 F.3d 663, 669 (2d Cir. 2005). By resorting to the legislative history to resolve such ambiguity—rather than simply interpreting that ambiguity in favor of immunity—the Second Circuit's approach to the sovereign immunity analysis is incompatible with the Supreme Court's standard expressed in *Cooper* and *Kirtz*. The same is true of the Ninth Circuit's decision applying EAJA to habeas petitions. *See In re Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985).

The Third and Tenth Circuits also held recently that EAJA applies to habeas petitions seeking release from immigration detention. *See Michelin v. Warden Moshannon Valley Correctional Ctr.*, No. 24-2990, 2026 WL 263483, at *1–2 (3d Cir. Feb. 2, 2026) (holding that "a petition for a writ of habeas corpus from immigration detention under § 2241 is an EAJA 'civil action'"); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (concluding that "habeas actions challenging immigration detention are unambiguously 'civil actions'" under EAJA). But those decisions relied largely on a determination that habeas actions historically were considered civil. *Michelin*, 2026 WL 263483 at *4; *Daley*, 158 F.4th at 1159-61. To the contrary, this Court should "rel[y] on persuasive Supreme Court . . . precedent that enumerated why habeas proceedings are hybrid proceedings that are meaningfully different from civil actions." *Obando-Segura*, 999 F.3d at 195.

In short, the unique nature of habeas petitions makes them not unambiguously or unmistakably "civil actions" within the meaning of EAJA. Accordingly, EAJA's text cannot

satisfy the Supreme Court's stringent test that "a waiver of sovereign immunity must be '*unequivocally expressed*' in statutory text." *Cooper*, 566 U.S. at 290 (emphasis added). Sovereign immunity thus precludes an award under EAJA here.

**B. Respondents Were "Substantially Justified" in Asserting that Petitioner is Subject to Mandatory Detention under 8 U.S.C. § 1225(b)(2)(A)**

In any event, Respondents were substantially justified in detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A), as evidenced most recently by the Fifth Circuit's ruling in the government's favor on this issue. *See Buenrostro-Mendez*, 2026 WL 323330, at *1.

The First Circuit has "held that the government is 'substantially justified' if 'it has a reasonable basis in law and fact' for its position[.]" *Michel*, 68 F.4th at 78 (quoting *Aronov*, 562 F.3d at 94). In other words, the government is "substantially justified" if "a reasonable person could think [the government's position] correct[.]" *Id*. (quoting *Dantran, Inc. v. U.S. Dep't of Lab.*, 246 F.3d 36, 41 (1st Cir. 2001)). "To be 'substantially justified,' it is not necessary for the [g]overnment's position to be 'justified to a high degree'; rather, the [g]overnment meets this standard if its position is 'justified in substance or in the main.'" *Id*. (quoting *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010)). "Further, even if the government failed on the merits, its position could still have been substantially justified." *Id*. However, "the government must justify not only its pre-litigation conduct but also its position throughout litigation." *Dantran*, 246 F.3d at 41.

First, ICE was substantially justified in detaining Petitioner as an "applicant for admission" because "a reasonable person could think [ICE's] position correct." *See Michel*, 68 F.4th at 78. An "applicant for admission" is, among other things, "[a]n alien present in the United States who has not been admitted[.]" 8 U.S.C. § 1225(a)(1). And 8 U.S.C. § 1225(b)(2)(A) mandates detention of an "applicant for admission" who is "seeking

admission" and "not clearly and beyond a doubt entitled to be admitted." Petitioner does not allege that she was "admitted" to the United States. Thus, she meets the definition of an "applicant for admission." 8 U.S.C. § 1225(a)(1).

The First Circuit has not resolved whether a person in Petitioner's circumstances is subject to mandatory detention under § 1225(b)(2)(A).[6] However, the Fifth Circuit recently held that an "applicant for admission" arrested within the United States, who "has not showed himself to be 'clearly and beyond a doubt entitled to be admitted[,]'" is subject to mandatory detention under § 1225(b)(2)(A). *Buenrostro-Mendez*, 2026 WL 323330, at *1. To reach that conclusion, the Fifth Circuit reasoned that a non-citizen who is "present in the United States and ha[s] not been admitted" is an "applicant for admission," and § 1225(b)(2)(A) requires detention of an "applicant for admission" without eligibility for bond. *Id*. at *4.

The Fifth Circuit then rejected petitioners' argument "that § 1225(b)(2)(A) applies only to aliens who are both 'applicants for admission' and 'seeking admission.'" *Id*. The court reasoned that "there is no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." *Id*. at *4 (quoting *Garibay-Robledo v. Noem*, No. 25-cv-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)). Thus, the Fifth Circuit concluded that petitioners were "deemed, by statute, to be applicants for admission pending the resolution of removal proceedings[,]" such that they were "presently seeking admission." *Id*. at *5.

The Fifth Circuit's decision is consistent with several district court decisions across the country. *See, e.g.*, *Garibay-Robledo*, 2026 WL 81679, at *1 (holding that a noncitizen arrested

[6] An appeal is pending before the First Circuit in the *Guerrero Orellana* class action litigation.

within the United States "'who has not been admitted' . . . is an 'applicant for admission' subject to Section 1225's mandatory-detention provision"); *Chen v. Almodovar,* No. 25-cv-8350, 2025 WL 3484855, at *4 (S.D.N.Y. Dec. 4, 2025) (holding that mandatory detention under § 1225(b)(2) "clearly applies" to a petitioner who entered the United States without admission, where "no 'examining immigration officer' has 'determine[d]' that [p]etitioner is 'clearly and beyond a doubt entitled to be admitted'" (quoting 8 U.S.C. § 1225(b)(2)(A))); *Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (holding that petitioners who were present in the United States without being admitted are "applicants for admission" subject to mandatory detention under § 1225(b)(2)); *Romero v. Bondi*, No. 25-cv-993, 2025 WL 2490659, at *2 (E.D. Va. July 2, 2025) ("Despite Petitioner being released on bond and later redetained, he is still considered an 'applicant for admission' as he has never been admitted into the United States."); *Vargas Lopez v. Trump*, No. 25-cv-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (holding that a non-citizen was an "applicant for admission" even though he had "illegally remained in this country for years"); *Maldonado v. Bostock*, No. 23-cv-00760, 2023 WL 5804021, at *1–3 (W.D. Wash. Aug. 8, 2023) (holding that an individual apprehended near the border and later processed under § 1226 "appears to be an applicant for admission because he is a noncitizen 'present in the United States' and 'has not been admitted'" (quoting 8 U.S.C. § 1225(a)(1)). "This jurisprudence makes it clear that the government's position was, and continues to be, substantially justified." *See Michel*, 68 F.4th at 80.

ICE's detention of Petitioner likewise was "substantially justified" under the due process clause because the Supreme Court has held that applicants for admission—like Petitioner—are entitled only to the protections set forth by statute—here, § 1225(b)(2)(A)—and that "the Due

Process Clause provides nothing more . . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see also, e.g.*, *Romero*, 2025 WL 2490659, at *3.

Likewise, Respondents' position in this litigation was substantially justified. Respondents filed an abbreviated response to the Petition, in which Respondents conceded that the Petition raised issues "similar to those recently addressed by this Court" in a prior habeas case, and recognized that the Court would order a bond hearing here if it applied the same reasoning as in its prior case. *See* Response to Habeas Pet. (Jan. 30, 2026), Doc. No. 7 at 1. Thus, Respondents preserved their argument that mandatory detention under § 1225(b)(2)(A) applied while expeditiously advancing the Petition toward a bond hearing.

The "mere fact that the government [did] not prevail is not dispositive on the issue of substantial justification." *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001). Nor is it dispositive that each session of this Court to address the issue has held that § 1225(b)(2)(A) does not apply to circumstances similar to this case. Instead, the question is whether "a reasonable person could think [the government's position] correct[.]" *Michel*, 68 F.4th at 78. And here, the Fifth Circuit—and several district courts across the country—agree with Respondents' position in this case, which indicates that "a reasonable person could think" that Respondents' litigation position was "correct."

### C. Respondents Were "Substantially Justified" in Detaining Petitioner Despite His Status as a Special Immigrant Juvenile

Finally, Petitioner's SIJ status did not render Respondents' position unjustified because SIJ status did not immunize Petitioner from mandatory detention under § 1225(b).[7] Instead, an

[7] To be clear, none of the Petition's four claims asserted that Petitioner's detention was unlawful due to his SIJ status or grant of deferred action. Pet., Doc. No. 1, ¶¶ 63–78. Nevertheless, Respondents address Petitioner's SIJ status in an abundance of caution. On the other hand, Petitioner appears to concede that deferred action did not protect him from detention

individual with SIJ status remains subject to arrest, detention, and removal from the United States. *See Benito Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025) ("The fact that petitioner has been given special immigrant juvenile . . . status has no effect on ICE's statutory and regulatory authority to detain him."); *Cortez-Amador v. Attorney Gen.*, 66 F.4th 429, 432–433 & n.11 (3d Cir. 2023) ("Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis."); *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) ("[A]n SIJ designation does not strip the U.S. government of all removal powers."); *Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. 16-cv-5727, 2017 WL 3390234, at *5–6 (E.D. Pa. Aug. 7, 2017) (rejecting that SIJ approval grants immigration status and prevents removal).

Accordingly, Respondents were justified in detaining Petitioner 8 U.S.C. § 1225(b)(2) despite his SIJ status. Moreover, Respondents were justified in viewing such detention as constitutional because—as an applicant for admission—Petitioner is entitled only to the procedural protections and process provided by statute. *See Benito Vasquez*, 788 F. Supp. 3d at 181 (holding that detention of a noncitizen with SIJ status did not violate due process); *Thuraissigiam*, 591 U.S. at 139–40.

## IV. CONCLUSION

For the foregoing reasons, the Court should not award fees or costs to Petitioner under EAJA.

---

(as opposed to removal). *E.g.*, *id.* ¶ 41 ("Deferred action does not confer lawful status and does not prevent an immigration judge from issuing a removal order. However, unless and until terminated, a grant of deferred action prevents immigration authorities from physically removing a noncitizen from the United States.").

Dated: February 19, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Julian N. Canzoneri*
Julian N. Canzoneri
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3170
julian.canzoneri@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on February 19, 2026.

*/s/ Julian N. Canzoneri*
Julian N. Canzoneri
Assistant U.S. Attorney