UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE LUIS PADILLA POSADAS,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE, *et al.*,<br><br>Respondents. | No. 1:26-cv-10276-ADB |

**RESPONDENTS' OPPOSITION TO MOTION FOR FURTHER RELIEF (Doc. No. 17)**

The Court should deny Petitioner Jose Luis Padilla Posadas' motion for further relief in the form of reinstatement of his deferred action and employment authorization. First—and dispositively—Petitioner's motion seeks relief unavailable in this habeas proceeding. *See Alawieh v. Tweedie*, 808 F. Supp. 3d 205, 211–214 (D. Mass. 2025). And even if the Court entertains Petitioner's motion in habeas, the Immigration and Nationality Act ("INA") precludes this Court from hearing any claim challenging the Executive's decision to pursue an individual's removal—including the Executive's decision to terminate Petitioner's deferred action. *See* 8 U.S.C. § 1252(g). Moreover, Petitioner's claims are not reviewable under the Administrative Procedure Act ("APA") and, regardless, Petitioner's motion fails on the merits because the government's actions were not arbitrary and capricious nor violative of due process.

## I. BACKGROUND

### A. The Habeas Petition

On January 22, 2026, Petitioner filed a habeas petition. Pet. for Writ of Habeas Corpus (Jan. 22, 2026), Doc. No. 1 ("Pet."). Petitioner alleged that his immigration detention violated statute and the Constitution, and requested immediate release or a bond hearing. *See generally*

*id*. In support, Petitioner noted that he had special immigrant juvenile ("SIJ") classification, deferred action, and a work permit. *Id*. ¶¶ 21.

Respondents filed an abbreviated response to the Petition, conceding "that the legal issues presented in this Petition [were] similar to those recently addressed by this Court in *Morales v. Plymouth County Correctional Facility*."[1] Response to Habeas Pet. (Jan. 30, 2026), Doc. No. 7 at 1. Respondents submitted that, if "the Court follow[ed] its reasoning in *Morales*, it would reach the same result" in this case. *Id*.

Accordingly, the Court granted the habeas petition and ordered that Respondents provide Petitioner a bond hearing by February 12, 2026. Electronic Order (Feb. 2, 2026), Doc. No. 8. On February 5, 2026, the immigration court granted bond to Petitioner, and he was released on February 10, 2026. Status Report (Feb. 11, 2026), Doc. No. 12 at 1; Mot. for Further Relief (June 4, 2026), Doc. No. 17 at 6 ("Mot."). On June 3, 2026, the Court entered judgment.[2] Judgment (June 3, 2026), Doc. No. 16.

**B. Petitioner's Motion for Further Relief**

After the Court entered judgment, Petitioner filed the instant motion for further relief in the form of reinstatement of his deferred action and employment authorization. Mot., Doc. No.

[1] Electronic Order, *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602-ADB (D. Mass. Sept. 30, 2025), Doc. No. 15.

[2] After the Court granted the petition, on February 4, 2026, Petitioner filed an amended habeas petition asking for release or a bond hearing, and for the Court to "[d]eclare that Respondents' revocation of Petitioner's deferred action, and the associated termination of employment authorization, were unlawful." Am. Pet. for Writ of Habeas Corpus (Feb. 4, 2026), Doc. No. 9, ¶¶ 2, 85–90, Prayer for Relief. In light of the Court's order resolving the habeas petition, Respondents did not respond to the amended petition, and the Court did not act on it before entering judgment.

17 at 1–2. In support, Petitioner alleges that, on April 5, 2023, United States Citizenship and Immigration Services ("USCIS") granted his petition for SIJ classification and gave him deferred action. *Id*. at 3; Doc. No. 17-1 at 1. USCIS's approval notice stated that Petitioner's "grant of deferred action will remain in effect for a period of four years . . . unless terminated earlier by USCIS." Doc. No. 17-1 at 1. Petitioner "also obtained a work permit based on the deferred action, valid until 2027." Mot., Doc. No. 17 at 3. Thereafter, on January 16, 2024, "an immigration judge granted termination of [Petitioner's] removal proceedings . . . because [Petitioner's SIJ] petition was approved and he was simply awaiting the opportunity to apply for permanent resident status."[3] *Id*.

However, Petitioner alleges that, after immigration authorities arrested him on January 22, 2026, "they gave him a 'Termination Notice,' dated the same day . . . , informing [Petitioner] that USCIS had terminated his deferred action." *Id*. at 4; Doc. No. 17-5 at 1–2. The Termination Notice stated that USCIS had "individually reviewed [Petitioner's] case and exercised discretion to terminate [his] period of deferred action."[4] Doc. No. 17-5 at 1. The Termination Notice explained that "[d]eferred action is a discretionary determination . . . to defer immigration enforcement action against an individual as an act of prosecutorial discretion[,]" and that Petitioner "may not appeal or move to reopen/reconsider" termination of his deferred action. *Id*. The Termination Notice further notified Petitioner of USCIS's "intent to revoke [Petitioner's] deferred action-based employment authorization . . . because the condition upon which

---

[3] Petitioner now has filed for adjustment of status because "his date for filing applications has become current." Mot., Doc. No. 17 at 3.

[4] The Termination Notice made clear that Petitioner's SIJ classification "remains approved." Doc. No. 17-5 at 1.

[Petitioner's] employment authorization was granted no longer exists as [Petitioner's] period of deferred action has been terminated." *Id.*

Six days later, on January 28, 2026, USCIS followed up with a Notice of Intent to Revoke Petitioner's employment authorization because Petitioner was "no longer in a period of deferred action[.]" Doc. No. 17-7 at 1. The notice allowed Petitioner "until February 17, 2026, to submit any evidence" showing "why [USCIS] should not revoke [his employment authorization document ('EAD')]" due to termination of his deferred action. *Id.* Absent such a submission, "USCIS [would] revoke [Petitioner's] EAD." *Id.* In response, Petitioner replied to USCIS on February 5, 2026, "with arguments about why the termination was unlawful." Mot., Doc. No. 17 at 6.

On July 16, 2026, USCIS issued a Notice of Revocation stating that USCIS has "revoked [Petitioner's] employment authorization." Ex. 1, Notice of Revocation (July 16, 2026), at 1. According to the Notice of Revocation, Petitioner "may not appeal this decision," but "may file a motion to reopen and/or a motion to reconsider" within a specified period of roughly 30 days from July 16, 2026. *Id.* If USCIS does "not receive the motion to reopen or reconsider within the required period, [USCIS's] decision *will become final*." *Id.* (emphasis added).

Petitioner's instant motion for further relief claims that USCIS's termination of Petitioner's deferred action and purported revocation of his employment authorization violate Petitioner's "due process rights and are arbitrary and capricious agency action" under the APA. Mot., Doc. No. 17 at 2, 8–10. Petitioner also claims that his arrest by immigration authorities violated the Fourth Amendment such that USCIS's subsequent termination of deferred action and purported termination of employment authorization was unlawful. *Id.* at 11–13. Petitioner

requests "an order from this Court reinstating his deferred action and related employment authorization." *Id*. at 2.

## II. ARGUMENT

### A. The Court Lacks Habeas Jurisdiction

First, and most importantly, the Court lacks jurisdiction over Petitioner's motion because Petitioner seeks relief unavailable in this habeas action. "The jurisdiction of federal district courts where habeas corpus is invoked to challenge immigration detention is limited." Order on Consolidated Petitions for Writs of Habeas Corpus, *Goncalves Oliveira v. Lyons*, No. 25-cv-12859-LTS (Oct. 24, 2025), Doc. No. 11 at 5. A "court may grant a writ of habeas corpus 'to a prisoner' only if she 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Alawieh*, 808 F. Supp. at 209 (quoting 28 U.S.C. § 2241(c)(3)). "This language makes 'clear,' as does 'the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.'" *Id*. (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). Indeed, the First Circuit recently reaffirmed that the "traditional meaning and purpose of habeas corpus [is] to effect release from illegal custody." *St. John v. Campbell*, 174 F.4th 228, 231 (1st Cir. 2026) (quoting *Lefkowitz v. Fair*, 816 F.2d 17, 23 (1st Cir. 1987)). Thus, if "a petitioner seeks relief that 'falls outside the scope of the writ as it was understood when the Constitution was adopted,' her claims are beyond the reach of a federal court's habeas jurisdiction." *Alawieh*, 808 F. Supp. 3d at 209 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020)).

Here, Petitioner's request for reinstatement of his deferred action and employment authorization exceeds the scope of habeas relief. To be sure, Petitioner was in custody when he

filed his original petition, and that petition sought release from detention. Pet., Doc. No. 1, ¶ 1 & Prayer for Relief. But Petitioner concedes he was released on February 10, 2026. Mot., Doc. No. 17 at 6. Therefore, the Court's jurisdiction "remains intact" only "to the extent [Petitioner] continues to assert claims and seek relief properly pursued in a habeas petition and not restricted by the INA." *Alawieh*, 808 F. Supp. 3d at 210. And Petitioner does not do so where, as here, he "no longer seeks release from confinement or any other ongoing supervision by immigration authorities which might constitute 'custody' in the habeas context." *Id*. at 212. Instead, Petitioner asks the Court to reinstate his deferred action and employment authorization. Mot., Doc. No. 17 at 2; *see Alawieh*, 808 F. Supp. 3d at 211–214 (dismissing an amended habeas petition that sought reinstatement of a visa, among other relief).

Accordingly, the Court should deny Petitioner's motion for further relief because the relief it seeks—reinstatement of deferred action and employment authorization—is not viable in habeas. *Hernandez Garcia v. Mullin*, No. 25-cv-00605, 2026 WL 1266246, at *7 (E.D. Tenn. May 8, 2026) (holding that a claim challenging "the agency's motive for terminating [petitioner's] deferred-action status . . . must be brought, if at all, in a separate civil action under 28 U.S.C. § 1331"); Order on Consolidated Petitions for Writs of Habeas Corpus, *Goncalves Oliveira v. Lyons*, No. 25-cv-12859-LTS (Oct. 24, 2025), Doc. No. 11 at 8 n.8 ("To the extent Petitioner[] wish[es] to assert general civil (non-habeas) claims, [he] may do so by filing a civil complaint." (collecting cases)).

### B. Even if the Court Has Habeas Jurisdiction, 8 U.S.C. § 1252(g) Bars Review of Plaintiff's Request for Reinstatement of Deferred Action and Employment Authorization

Regardless, 8 U.S.C. § 1252(g) deprives this Court of jurisdiction to review "any cause or claim by or on behalf of any alien arising from the decision or action by [the Secretary of

Homeland Security] to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This provision is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Specifically, "Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485.

A deferred action decision refers to the Executive's discretionary decision to defer or even "abandon" "the initiation or prosecution of various stages in the deportation process." *Id.* at 483. Relevant here, USCIS previously granted deferred action to many individuals who were granted SIJ classification. Under the INA, an unmarried individual under the age of 21 who came to the country illegally may seek classification as an SIJ and potentially become eligible for lawful permanent resident status. 8 U.S.C. § 1255(a), (h). "However, 'due to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years.'" *Primero*, 2025 WL 1899115, at *2 (citation omitted, alterations adopted). Accordingly, USCIS used to "consider granting deferred action on a case-by-case basis to SIJs who [were] ineligible to obtain adjustment of status solely due to unavailable immigrant visa numbers." *Id.*

"USCIS reserves the right to terminate prior grants of deferred action and revoke the related employment authorization as a matter of discretion," including but not limited to cases where the agency "determines the favorable exercise of discretion is no longer warranted." USCIS, *Policy Manual*, vol. 6, pt. J., ch. 4 ¶ G.2, https://www.uscis.gov/policy-manual/volume-

6-part-j-chapter-4; *see, e.g.*, *Primero*, 2025 WL 1899115, at *2 ("USCIS reserves the right to terminate grants of deferred action to SIJs 'as a matter of discretion.'" (citation omitted)); *Inlago Tocagon v. Moniz*, No. 25-cv-12453-MJJ, 2025 WL 2778023, at *4 (D. Mass. Sept. 29, 2025) ("USCIS has discretion to terminate grants of deferred action to SIJ[s]"). "This termination and revocation may occur at any time, including prior to the end of the current validity period(s)." USCIS, *Policy Manual*, vol. 6, pt. J., ch. 4 ¶ G.2.

Here, Petitioner seeks to reverse USCIS's decision to terminate his deferred action, which means he necessarily challenges the Executive's decision to continue—*i.e.*, not defer—the prosecution of his removal proceedings. By doing so, Petitioner challenges the government's decision to "adjudicate" his removal proceedings, and § 1252(g) deprives this Court of jurisdiction. *See Vasquez v. Aviles*, 639 F. App'x 898, 901 (3d Cir. 2016) ("[Section 1252(g)] deprives all courts of jurisdiction to review a denial of DACA relief because that decision involves the exercise of prosecutorial discretion not to grant a deferred action." (citing *Reno*, 525 U.S. at 485)).

In fact, Congress enacted § 1252(g) to guard against lawsuits challenging the Executive's decision not to grant deferred action to a particular person. As the Supreme Court explained in *Reno*, the Executive had been granting deferred action in certain cases "for humanitarian reasons or simply for its own convenience." 525 U.S. at 483–84. The "exercise of this discretion," however, "opened the door to litigation in instances where the [Executive] chose *not* to exercise it." *Id.* at 484. Accordingly, "Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations[.]" *Id.* at 485. Here, Petitioner's motion for further relief, which challenges the government's discretionary decision to terminate his deferred action, thus "falls squarely within" this

jurisdictional bar. *See id.* at 487. Indeed, § 1252(g) "seems to have been crafted with such a challenge precisely in mind." *Id.*

The Supreme Court's decision in *Regents* does not compel a different conclusion. There, the Court found that § 1252(g) did not apply to recission of the Deferred Action for Childhood Arrivals ("DACA") program. *U.S. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020). Here, however, Petitioner seeks to challenge an *individual enforcement decision* (to terminate his deferred action)—not the rescission of a non-enforcement *policy*.[5] Tellingly, the litigation in *Regents* itself confirmed that Section 1252(g) *would apply* to a claim challenging the government's decision to terminate an *individual's* deferred action. *Regents* affirmed a Ninth Circuit decision with respect to Section 1252(g). And that decision, in turn, explained that Section 1252(g) addresses "litigation over *individual* 'no deferred action' decisions, rather than a programmatic shift like the DACA rescission." *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 503–04 (9th Cir. 2018).

### C. USCIS's Actions Did Not Violate the APA

#### 1. USCIS's termination of Petitioner's deferred action and purported termination of his work authorization are committed to agency discretion by law.

Even if the Court concludes it has jurisdiction to consider Petitioner's motion in habeas and notwithstanding § 1252(g), the Court still lacks jurisdiction under the APA. For one, the APA does not allow for judicial review of agency actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(1). And as the Supreme Court has explained, "an agency's decision not

[5] *But see* Electronic Order, *Ruiz Primero v. Edlow*, No. 25-cv-12752-RGS (D. Mass. Mar. 25, 2026), Doc. No. 20 (holding that § 1252(g) did not preclude review of "a decision to terminate deferred action status").

to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion" and "unsuitab[le] for judicial review." *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985). The Supreme Court has also confirmed that this "principle of enforcement discretion . . . extends to the immigration context." *United States v. Texas*, 599 U.S. 670, 679 (2023). In *Chaney*, the Supreme Court explained that a decision not to enforce "often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether agency resources are best spent on this violation or another" and whether enforcement in a particular scenario "best fits the agency's overall policies[.]" 470 U.S. at 831. Accordingly, the Supreme Court concluded that, absent a statute "circumscribing an agency's power to discriminate among issues or cases it will pursue," the agency's "exercise of enforcement power" is "committed to agency discretion by law." *Id.* at 833, 835.

No statute expressly or implicitly circumscribes USCIS's authority to terminate an individual's deferred action. To the contrary, the INA and related statutes grant the U.S. Department of Homeland Security ("DHS") broad discretion in enforcing immigration laws. *See* 6 U.S.C. § 202(5) (charging DHS with "[e]stablishing national immigration enforcement policies and priorities"); *Texas*, 599 U.S. at 679 (explaining that the Executive has "discretion over whether to remove a noncitizen from the United States" (citing *Arizona v. United States*, 567 U.S. 387, 396 (2012))). There is thus no "law to apply" to judge DHS's exercise of its broad enforcement discretion in terminating an individual's deferred action. See *Chaney*, 470 U.S. at 833-834; *Texas*, 599 U.S. at 679.

In sum, the Supreme Court "has declared that the Executive Branch . . . retains discretion over whether to remove a noncitizen from the United States." *Texas*, 599 U.S. at 679. And "courts generally lack meaningful standards for assessing the propriety of enforcement choices in

this area," *id.*, such as the choice to terminate an individual's deferred action. The enforcement choice to terminate Petitioner's deferred action is thus unreviewable under the APA as "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

**2. USCIS's notice revoking Petitioner's employment authorization is not a final agency action.**

Moreover, Petitioner's APA claim fails as to USCIS's purported revocation of Petitioner's employment authorization because USCIS's Notice of Revocation is not a "final", reviewable agency action. Instead, the Notice of Revocation indicates that USCIS's decision "will become final" only if Petitioner does not timely move for reconsideration with USCIS. Ex. 1, Notice of Revocation (July 16, 2026), at 1.

"For an agency action to be reviewable under the APA, it must be 'final' action[.]" *Am. Assoc. of Univ. Profs. v. Rubio*, 780 F. Supp. 3d 350, 385 (D. Mass. 2025) (quoting *Lujan v. Defenders of Wildlife*, 497 U.S. 871, 882 (1990)). "To be final, agency action must be 'one by which rights and obligations have been determined' or from which 'legal consequences will flow.'" *Id*. (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Accordingly, "the action must mark the 'consummation' of the agency's decisionmaking process," and the action "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).

Here, USCIS's Notice of Revocation, by its terms, is not an agency decision "'by which rights and obligations have been determined' or from which 'legal consequences will flow.'" *Am. Assoc. of Univ. Profs. v. Rubio*, 780 F. Supp. 3d 350, 385 (quoting *Bennett*, 520 U.S. at 177-78). Instead, USCIS's Notice of Revocation is "interlocutory" because it gives Petitioner an opportunity to move to reconsider the revocation, and expressly conditions the "final" revocation

on USCIS's not timely receiving a motion to reconsider. Ex. 1, Notice of Revocation (July 16, 2026), at 1. Accordingly, Petitioner's APA claim challenging revocation of Petitioner's employment authorization is unreviewable for lack of "final" agency action.

**3. USCIS's actions were not arbitrary or capricious.**

Even if the Court can review USCIS's revocation of Petitioner's deferred action and purported revocation of employment authorization under the APA, USCIS did not act arbitrarily or capriciously. Petitioner argues that no change in circumstances warranted revocation of his deferred action and purported revocation of his work permit, and that USCIS's actions lacked a rational connection to the applicable facts. Mot., Doc. No. 17 at 10. But USCIS did not terminate Plaintiff's deferred action based on the same facts underlying its earlier decision to grant him deferred action. Instead, between the grant and termination of Petitioner's deferred action, U.S. Immigration and Customs Enforcement ("ICE") withdrew prior guidance directing that SIJs were not enforcement priorities.[6] Thereafter, USCIS's Termination Notice stated that USCIS had "individually reviewed [Petitioner's] case and exercised discretion to terminate [his] period of deferred action." Doc. No. 17-5 at 1.

**D. Petitioner's Due Process Argument Fails Because He Lacks a Constitutionally Protected Interest**

Petitioner's due process claim likewise fails because he lacks a protected due process interest in USCIS's discretionary decisions concerning his deferred action and work

[6] *See* ICE Directive 11005.3 (Dec. 2, 2021) at 2, 4 (providing that, "absent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against," among others, SIJs), https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf; ICE Policy 11005.4 (Jan. 30, 2025) at 1 (rescinding ICE Directive 11005.3), https://www.ice.gov/doclib/foia/policy/11005.4.pdf.

authorization. "For due process protections to attach, there must be a cognizable property or liberty interest at stake." *Naeem v. Gonzales*, 469 F.3d 33, 38 (1st Cir. 2006); *accord, e.g.*, *Chun Xin Chi v. Holder*, 606 F.3d 6, 10 (1st Cir. 2010). And "discretionary . . . forms of relief" in immigration proceedings are not "an entitlement or a right." *Naeem*, 469 F. 3d at 38; *see Hernandez Garcia*, 2026 WL 1266246, at *7 (explaining that "grants of deferred-action status are indisputably discretionary acts" and are "indisputably forms of affirmative relief from removal"). Here, "USCIS has discretion to terminate grants of deferred action to SIJ[s] . . . ." *Inlago Tocagon*, 2025 WL 2778023, at *4. Thus, "[d]eferred-action status, granted as a matter of administrative discretion and revocable at the agency's election, is not" a "protected liberty or property interest." *Hernandez Garcia*, 2026 WL 1266246, at *12. Accordingly, Petitioner's due process claim fails. *See id*. at *11 (concluding that petitioner had "no protected liberty or property interest in continued deferred-action status").[7]

### E. Petitioner's Arrest Does Not Warrant Reinstatement of Deferred Action or Employment Authorization

Finally, Petitioner argues that his arrest was unlawful, such that USCIS's subsequent revocation of deferred action and purported revocation of employment authorization are unlawful, too. But even assuming, *arguendo*, that Petitioner's arrest was unlawful, it does not follow that revocation of his deferred action and any revocation of employment authorization automatically were unlawful, too. And that is particularly so where, as here, Petitioner's arrest was separate from, and not required for, termination of his deferred action.[8]

---

[7] *But see, e.g.*, *Alfaro v. Mullin*, No. 26-0766, 2026 WL 734348, at *6 (E.D.N.Y. Mar. 16, 2026).

[8] Even if the Court is inclined to find USCIS's revocation of Petitioner's deferred action unlawful, the Court should not reinstate his deferred action. Instead, the proper remedy is to

## III. CONCLUSION

For the foregoing reasons, the Court should deny Petitioner's motion for further relief (Doc. No. 17).

Dated: July 23, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ Julian N. Canzoneri
Julian N. Canzoneri
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3170
julian.canzoneri@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on July 23, 2026.

/s/ Julian N. Canzoneri
Julian N. Canzoneri
Assistant U.S. Attorney

---

vacate and "remand[] to the agency for consideration anew." Electronic Order, *Ruiz Primero v. Edlow*, No. 25-cv-12752-RGS (D. Mass. Mar. 25, 2026), Doc. No. 20