**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JOSE LUIS PADILLA POSADAS,**<br><br>Petitioner,<br><br>v.<br><br>**PATRICIA H. HYDE**, Acting Director of U.S. Immigration and Customs Enforcement, Boston Field Office; **TODD LYONS**, Acting Director of U.S. Immigration and Customs Enforcement; **KRISTI NOEM**, Secretary of Homeland Security; **PAMELA BONDI**, U.S.Attorney General; **SIRCE OWEN,** Acting Director, Executive Office for Immigration Review; and **TERESA RILEY,** Chief Immigration Judge, in their official capacities,<br><br>Respondents. | **Case No. 1:26-cv-10276** |

**REPLY TO RESPONDENTS' OPPOSITION TO MOTION FOR FURTHER RELIEF**
**[ECF No. 24] (LEAVE TO FILE GRANTED ON JULY 24, 2026)**

Petitioner Jose Luis Padilla Posadas was granted Special Immigrant Juvenile Status ("SIJS") that came with a grant of deferred action ("DA"), meaning that he was deprioritized for immigration enforcement and allowed to apply for an employment authorization document ("EAD") while he awaited his opportunity to apply for permanent resident status. When Respondents arbitrarily arrested and detained him, U.S. Citizenship and Immigration Services ("USCIS") opportunistically terminated his DA without cause. This Court has already determined that Mr. Padilla's detention without a bond hearing was unlawful. Similarly, the arbitrary and baseless termination of DA in connection with an immigration detention was unlawful, as several courts have recognized. *See Sanchez Alfaro v. Mullin*, 2026 WL 734348, at *6 (E.D.N.Y. Mar. 16, 2026); *Garcia Lanza v. Noem*, 2026 WL 585130, at *7-9 (E.D.N.Y. Mar.

3, 2026*); see also A.R. v. Noem*, 2026 WL 194850, at *7 (C.D. Cal. Jan. 26, 2026), *Lopez Sarmiento v. Perry*, 2026 WL 131917, at *7-8 (E.D. Va. Jan. 19, 2026). Through this habeas action, Mr. Padilla asked for an immigration court bond hearing and the restoration of his DA. The Court found him entitled to a bond hearing; he received one and has been released from custody. Respondents now claim the Court does not have the power to grant the second part of his request, but they are wrong for the reasons below.

Respondents' opposition raises several points. First, they argue that the Court does not have power to address this issue in a habeas petition. As several courts have found, an unlawful DA termination may be considered as part of an unlawful detention, and as such is within the scope of remedies available in habeas. Second, they indicate that 8 U.S.C. § 1252(g) bars review, but termination of DA and the associated EAD is not part of the Attorney General's authority to "commence proceedings, adjudicate cases, or execute removal orders" pursuant to that statute. Next, they assert that the APA bars review, and that the DA termination was not arbitrary and capricious, because the agency has discretion to act. This is unsupported by any indication in this record that an agency ever exercised individualized discretion with regard to Mr. Padilla's DA, and undercut by Defendants' own assertions. Finally, they indicate that no due process interest attaches to DA termination – a proposition rejected by several courts and in conflict with applicable caselaw. For all these reasons, Respondents' opposition fails.

## I. As a collateral consequence flowing from the detention, reinstatement of DA is squarely within this Court's power to grant.

Habeas jurisdiction allows for more flexible relief than simply release from detention. As Respondents acknowledge, Mr. Padilla was in custody at the time he filed his habeas petition, which satisfies this Court's jurisdictional requirement. *Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002) (citing *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)); *see*

*also Alawieh v. Tweedie,* 808 F. Supp. 3d 205, 210 (D. Mass. 2025) ("the Court's jurisdiction attached when the petition was filed"). This Court had jurisdiction at the time of filing, and it continues today.

Habeas claims do not become moot upon the petitioner's release where "the petitioner can show some sufficient collateral consequence of the underlying proceeding." *Njuguna v. Smith*, No. 16-CV-12075-ADB, 2016 WL 6986208, at *1 (D. Mass. Nov. 28, 2016) (quoting *Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002)). *See also Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43 (1998) ("some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained"), and *Trump v. J. G. G.*, 604 U.S. 670, 672, 145 S. Ct. 1003, 1005, 221 L. Ed. 2d 529 (2025) (citing *Peyton v. Rowe*, 391 U.S. 54, 67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) for the proposition that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus"). In *Leitao,* the First Circuit cited several other circuits finding that a bar on readmission was enough to preserve jurisdiction even where a petitioner had been removed from the United States. 311 F.3d at 455 (citing *Chong v. District Director, INS*, 264 F.3d 378, 385–86 (3d Cir.2001); *Max–George v. Reno*, 205 F.3d 194, 196 (5th Cir.2000), *vacated on other grounds*, 533 U.S. 945, 121 S.Ct. 2585, 150 L.Ed.2d 746 (2001); *Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002); and *Tapia Garcia v. INS*, 237 F.3d 1216, 1218 (10th Cir. 2001)). Respondents' Opposition did not address this line of cases.

Next, Respondents did not mention that other courts have granted precisely the relief Mr. Padilla seeks. *See, e.g., Garcia Lanza v. Noem,* 822 F. Supp. 3d 326, 335 (E.D.N.Y. 2026) (on due process grounds, vacating ICE's "purported revocation of petitioner's period of deferred action and work authorization" and ordering them to return his work permit card); *Alfaro v.*

*Mullin*, No. 26-0766 (GRB), 2026 WL 734348, at *7 (E.D.N.Y. Mar. 16, 2026), *clarified on denial of reconsideration sub nom. Sanchez Alfaro v. Mullin*, No. CV 26-0766 (GRB), 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026) (same); *Sarmiento v. Perry*, 824 F. Supp. 3d 514, 529 (E.D. Va. Jan. 19, 2026) (holding, in habeas class action, that there was likelihood of success in APA and procedural due process challenges to DA revocation); *A.R. v. Noem*, No. 5:25-CV-03565-MEMF-PVC, 2026 WL 194850, at *9 (C.D. Cal. Jan. 26, 2026) (ordering that Respondents "not re-detain [Petitioner] without compliance with notice and an opportunity to be heard on the termination of Petitioner's deferred action"). All of these courts found that habeas jurisdiction extended to claims challenging DA revocation.

Cases declining to find jurisdiction, including those cited by Respondents, have no bearing on Mr. Padilla's situation. In *Njuguna,* the petitioner challenged solely the length of his detention; after his release, therefore, no active controversy remained to be adjudicated. 2016 WL 6986208, at *1. *Alawieh* is also inapt. That petitioner had actually been removed from the United States, sought to attack the validity of her expedited removal order under the Suspension Clause, and requested that she be returned to the United States – a very different factual and legal scenario than that presented here. Respondents relied on the Order in *Goncalves Oliveira v. Lyons,* No. 25-cv-12859-LTS (D.Mass. Oct. 24, 2025), but in that case the petitioners also sought unrelated relief: an injunction preventing their removal from the United States, effectively staying the orders of removal they had already received, and not meaningfully raising any challenge to their custody or GPS monitoring. *7. In contrast to *Alawieh* and *Goncalves Oliveira,* Mr. Padilla has no removal order, and the revocation of his DA is a direct and continuing consequence of his unlawful arrest and detention. This Court can, and should, assume

jurisdiction over Mr. Padilla's challenge to Respondents' unlawful revocation of his DA and related EAD.

**II. No statute bars judicial review of the DA termination and EAD revocation.**

In arguing that 8 U.S.C. § 1252(g) bars judicial review of DA termination, Respondents conflate removal proceedings with other types of immigration-related agency actions. Resp. Opp. at 8 ("…he necessarily challenges the Executive's decision to continue—i.e., not defer—the prosecution of his **removal proceedings**. By doing so, Petitioner challenges the government's decision to "adjudicate" his **removal proceedings**, and § 1252(g) deprives this Court of jurisdiction.") (emphasis added). Respondents' assertion that Mr. Padilla is seeking to somehow challenge a removal order or the DHS's decision to bring removal proceedings ignores the fact that he has **already been placed in removal proceedings, which were subsequently terminated**. *See* Ex. 1, printout of EOIR Automated Case Information. He does not have a removal order, nor are Respondents actively seeking to give him one at this time. This is not about removal, then; instead, it is about the Respondents' arbitrary decision to revoke DA and EAD opportunistically, without any consideration of individual factors.

Respondents argue that *Dep't of Homeland Sec. v. Regents of the Univ. of California* is not binding on this Court because a policy decision, rather than a decision in an individual matter, was at issue in that case. 591 U.S. 1, 19, 140 S. Ct. 1891, 1907, 207 L. Ed. 2d 353 (2020). However, the Supreme Court in *Regents* makes no such distinction.[1] In fact, it clearly indicates that "rescission, which revokes a deferred action program with associated benefits, is not a

[1] Respondents cited and quoted the Ninth Circuit opinion, but the Supreme Court ruling on this point governs.

decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order." *Id.* A different session of this Court has recently agreed:

> The court remains unpersuaded that a decision to terminate deferred action status, **even when viewed individually instead of on a programmatic scale**, qualifies as a decision to commence proceedings, adjudicate cases, or execute removal orders. Even if the decision were to implicate removal (e.g., because it revokes an existing bar to the execution of a removal order), however, the court would still find the jurisdictional bar of 8 U.S.C. § 1252(g) inapplicable here.

Electronic Order, *Ruiz Primero v. Edlow,* No. 25-cv-12752-RGS (D. Mass. Mar. 25, 2026), Doc. No. 20 (emphasis added). Similarly, Mr. Padilla is not asking the Court "to review Respondents' exercise of discretion or its execution of a removal order, but their failure to comply with the statutes and Constitution." *Zamora v. Noem*, No. 8:26CV79, 2026 WL 766087, at *2 (D. Neb. Mar. 18, 2026). Because termination of DA and revocation of the associated EAD – which, by law, can only be done by USCIS as a sub-agency of DHS, not the immigration court – is not a decision to "commence [removal] proceedings, adjudicate cases, or execute removal orders," it is not barred from judicial review by 1252(g). *See Alfaro v. Mullin*, 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026) (only USCIS, not ICE or any other arm of DHS, has the authority to revoke deferred action, and quoting testimony from ICE officers expressing confusion over that point). Therefore, this Court has the authority to consider Mr. Padilla's claim.

As well, the APA does not bar review. The APA establishes a "basic presumption of judicial review for one suffering legal wrong because of agency action." *Regents*, 591 U.S. at 16-17. The only exceptions to this presumption are set forth at 5 U.S.C. § 701(a)(1) and (2), neither of which applies here. Respondents have not raised § 701(a)(1), but regardless, it does not bar review as no other statute precludes judicial review of the process for DA or EAD terminations. The Section 701(a)(2) exception to judicial review is "very narrow" and applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to

apply," or "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 832 (1985). This is not such an instance. The SIJS DA adjudication process, as established by agency policy, involves clear standards against which to assess the agency's discretion. Indeed, as another court recently held, finding that Section 701(a)(2) did not bar a challenge to government rescission of the entire SIJS DA policy, SIJS DA is not a purely discretionary "nonenforcement policy," but "a standardized process" for "conferring affirmative immigration relief," requiring applicants "to meet certain enumerated criteria." *A.C.R.*, 809 F.Supp.3d at 116-117 ((finding that § 701(a)(2) did not bar APA challenge to rescission of SIJS DA policy); *see also Regents*, 591 U.S. at 18-19 (rejecting the position that Section 701(a)(2) barred an APA challenge to termination of the DACA program).

By policy, to be granted SIJS DA, noncitizens like Mr. Padilla had to first qualify for SIJS. This requires, among other criteria, that the petitioner meet an age requirement and obtain a state-court order with certain specified findings. *See A.C.R.*, 809 F.Supp.3d at 109 (citing 8 C.F.R. § 204.11). USCIS must also "weigh all relevant positive and negative factors in the person's case," with "[o]ne particularly strong positive factor" being that the individual "has an approved [SIJS petition] and will be eligible to apply for adjustment of status." USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, available at https://web.archive.org/web/20250418205752/https://www.uscis.gov/policymanual/volume-6-part-j-chapter-4. Once SIJS beneficiaries meet these criteria and are granted DA, agency policy indicates they "generally retain" that benefit until it expires. *Id.* Only USCIS may terminate a SIJS beneficiary's DA before expiration, and only after an individualized review which determines, for example, that a favorable exercise of discretion is no longer warranted; the individual's SIJS petition was approved in error and is revoked; or the prior DA was granted in

error. *Id*. These are all clear standards against which this Court can assess how the agency typically exercises its discretion.

The crux of Mr. Padilla's APA claim is that, for several reasons, USCIS cannot base its decision to terminate his DA benefit on an entirely arbitrary factor (ICE's arrest) and fail to provide good cause (or, actually, any reason at all) for this abrupt reversal. First, the Supreme Court has made clear that any agency decision with respect to discretionary relief must reflect reasoned decision-making related to the underlying purpose of that relief—otherwise the agency fails to "exercise its discretion in a reasoned manner." *Judulang v.Holder*, 565 U.S. 42, 55 (2011); *see also Biden v. Texas*, 597 U.S. 785, 815 (2022) (Kavanaugh, J., concurring) (The APA mandates "an executive agency's exercise of discretion be reasonable and reasonably explained."). Here, the decision to terminate Mr. Padilla's DA was apparently based solely on ICE's decision to detain him. Other courts have deemed such agency action irrational. In *Inland Empire-Immigrant Youth Collective v. Duke*, 2017 WL 5900061, at *6 (C.D. Cal. Nov. 20, 2017), the plaintiffs brought a similar challenge to USCIS's termination of a noncitizen's DACA based solely on his placement in removal proceedings for lack of lawful immigration status. That court found that because DACA was "specifically designed for persons without lawful immigration status," the agency's decision was irrational; *see also Inland Empire -Immigrant Youth Collective v. Nielsen*, 2018 WL 4998230, at *17-18 (C.D. Cal. Apr. 19, 2018) (denying government's motion to dismiss). The same is true for Mr. Padilla.

Second, whether a noncitizen is afforded discretionary relief should not "rest on the happenstance of an immigration official's charging decision." *Judulang*, 565 U.S. at 57. Yet Respondents do not contest that this is precisely the case here, where the continuation of Mr. Padilla's DA depended entirely on the actions of ICE officers who—unlawfully— arrested and

detained him. *See Inland Empire-Immigrant Youth Collective*, 2017 WL 5900061, at *7 (similar agency action likely arbitrary and capricious where "everything hung on the fortuity of one [immigration] officer's decision").

Finally, because the termination of Mr. Padilla's DA represented a change in the agency's position, USCIS should have offered "good reasons" for that change and should have considered Mr. Padilla's reliance interests before changing course. *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 569-70 (2025). Respondents have not suggested that the mere fact of Mr. Padilla's detention could provide a good reason for terminating his DA, nor that they took his reliance interests into consideration. *See Inland Empire-Immigrant Youth Collective*, 2017 WL 5900061, at *7 (reaching similar conclusion). For each of these reasons, Mr. Padilla has stated an APA claim challenging USCIS's arbitrary and capricious decision to terminate his DA.

## III. The Respondents' action was unreasoned and arbitrary, and cannot therefore be a lawfully protected exercise of discretion under the APA.

### A. Because there was no actual exercise of discretion with regard to Mr. Padilla's DA, Defendants' actions are not insulated by the APA from judicial review.

Mr. Padilla asserts that nobody in the Department of Homeland Security gave him an individualized determination at all, and therefore that their decision to revoke DA and EAD was not actually a lawful exercise of USCIS's discretionary authority. As described in his motion and supporting evidence, on January 22 Respondents did not know Mr. Padilla's identity until after they detained him, did not show him any warrant before arresting him, and wrote a narrative about the arrest of an entirely different person. Yet they would ask this Court to believe that USCIS – not ICE – mindfully and rationally determined, based on absolutely no change in

factual circumstances, that it would be appropriate to revoke his DA on the very same day. They have provided no evidence to that effect.

Defendants' own assertion further indicates that USCIS did not conduct any individualized analysis of Mr. Padilla's situation:

> USCIS did not terminate Plaintiff's deferred action based on the same facts underlying its earlier decision to grant him deferred action. Instead, between the grant and termination of Petitioner's deferred action, U.S. Immigration and Customs Enforcement ("ICE") withdrew prior guidance directing that SIJs were not enforcement priorities.

Resp. Opp. at 12. Respondents cite to an ICE policy that rescinds a 2021 ICE Directive. *Id.* They do not explain how an ICE policy would affect USCIS's exercise of discretion, nor how that policy change would make it more likely that USCIS conducted an individualized review of Mr. Padilla's situation before terminating his DA. This argument also neatly sidesteps the fact that USCIS did, in fact, attempt to change their policy concerning DA on June 6, 2025, and a court stayed that policy on November 19, 2025 (before Mr. Padilla was arrested). *See A.C.R. v. Noem*, 809 F. Supp. 3d 103, 109 (E.D.N.Y. 2025), *reconsideration denied,* No. 25-CV-3962-EK-TAM, 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026). Following that order, USCIS indicated that noncitizens "with current deferred action based on their SIJ classification: **Will generally retain this deferred action, as well as retain their current employment authorization provided based on their current grant of deferred action, until the validity period expires**." USCIS, "Special Immigrant Juveniles," available at https://www.uscis.gov/working-in-US/eb4/SIJ USCIS, updated 4/16/2026 [accessed Aug. 3, 2026] (emphasis added). USCIS retains the ability to terminate DA, but only through an individualized exercise of discretion. *See id.* Because there is no indication that they conducted any discretionary analysis with regard to Mr. Padilla, his DA termination was unlawful.

### B. The termination of DA and related revocation of EAD are now both final agency actions reviewable by this Court.

Defendants alleged that the Notice of Revocation of Mr. Padilla's EAD is not a final agency action. However, the termination of DA was a final action on the date it was issued. *See* Ex. 5 to Motion at 1 (USCIS has "exercised discretion to terminate your period of deferred action," and "You may not appeal or move to reopen/reconsider this decision"). Further, their assertion that the EAD revocation was not final is unavailing, as USCIS has recently issued a final revocation notice of Mr. Padilla's EAD. Ex. 2, Revocation Notice. Both of these are final decisions, ripe for this Court's review.

## IV. Numerous courts have recently held that due process requirements apply to termination of DA, even though it is a discretionary status.

Noncitizens physically present in the United States are entitled to due process protections. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). This is especially true for noncitizens granted SIJS status, as they "stand much closer to lawful permanent residents than to [noncitizens] present in the United States for a few hours before their apprehension," given that they are only "a hair's breadth from being able to adjust their status." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 174 (3d Cir. 2018). Where Respondents have conferred a significant benefit—here, DA, representing protection from removal and to work lawfully in the country—it may not deprive an individual of that benefit without notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Maldonado v. Noem*, No. 4:25-CV-2541, 2025 WL 1593133, at *2 (S.D. Tex. June 5, 2025) (finding that Petitioner was "likely to succeed on his Due Process claim" because he was denied "notice, a hearing, or any opportunity to contest the revocation of his deferred action"); *Nevarez Jurado v. Freden*, 813 F. Supp. 3d 376, 388 (W.D.N.Y. 2025) (detention and "possible imminent

deportation" of individual with grant of deferred action without a hearing "appear[ed] to be a procedural due process violation")). The required process depends on balancing: (1) the private interest affected; (2) the risk of erroneous deprivation through existing procedures and the probable value of additional safeguards; and (3) the government's interest, including fiscal and administrative burdens. *Id*. at 335. Balancing these factors shows that Mr. Padilla's boilerplate, post-hoc notice that his DA had been terminated (and EAD soon would be), with no explanation or opportunity to respond, did not satisfy due process. *See also Garcia Lanza v. Noem*, No. 26-0029 (GRB), 2026 WL 585130, at *7 (E.D.N.Y. Mar. 3, 2026) (citing *Nevarez Jurado v. Freden*, No. 25-CV-943 (LJV), 2025 WL 3687264, at *10 (W.D.N.Y. Dec. 19, 2025) (finding, under Mathews, that "the government [does not have] free [rein] to detain a deferred action recipient without a pre-detention hearing or individualized determination.") (additional citations omitted).

First, the private interests at stake are substantial. Mr. Padilla's grant of DA and EAD — governed by a "standard review process" with a "formal [approval] notice"—was "effectively [an] adjudication[]." *Regents,* 591 U.S. at 18. "DHS's decision to grant deferred action" is thus "an affirmative act of approval" that "confer[s] affirmative immigration relief," *id*., including protection from removal and the ability to seek lawful employment. Accordingly, the "grant of [deferred action] constitutes a conferred benefit that requires procedural safeguards before it can be terminated." *Inland Empire – Immigrant Youth Collective v. Nielsen*, No. 17-cv-2048, 2018 WL 4998230, at *19-20 (C.D. Cal. Apr. 19, 2018); *see also Ramirez Medina v. U.S. Dep't of Homeland Sec.,* No. 17-cv-0218, 2017 WL 5176720, at *8 (W.D. Wash. Nov. 8, 2017) (finding Deferred Action for Childhood Arrivals (DACA) recipients to have protected interest requiring procedural safeguards prior to termination, as "benefits have already been conferred"); *A.R.,* 2026 WL 194850, at *5 ("Petitioner could not have had his [SIJS] deferred action status revoked

without due process."); *Sarmiento*, 2026 WL 131917, at *8 (same). The loss of these benefits exposes Mr. Padilla to potential removal and strips him of his livelihood, inflicting precisely the kind of "serious loss" of private interests that requires strong due process protections. *Mathews*, 424 U.S. at 328 (internal quotation marks omitted).

Second, the risk of erroneous deprivation under Respondents' procedure for termination is exceptionally high, and requiring an actual discretionary determination would address these risks. *Martinez v. Noem*, No. 25-cv-01007, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025). Here, the unreasoned, unappealable termination notice carries an unacceptably high risk of erroneous deprivation of Mr. Padilla's protected interests. Indeed, "[t]he essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him" and "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 332, 333 (citations omitted); *see also id.* ("The 'right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society.'" (citation omitted)); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (confirming that the Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property") (emphasis in original). However, Mr. Padilla was afforded no advance notice or explanation, much less the right to be heard—all but ensuring the erroneous deprivation of critical benefits. *See A.R.*, 2026 WL 194850, at *6 (finding that the same boilerplate SIJS deferred action termination letter "does not provide sufficient notice of the reasons for his deferred action termination"); *Singh v. Vasquez*, No. 08-cv-1901, 2009 WL 3219266, at *5 (D. Ariz. Sept. 30, 2009), *aff'd,* 448 F. App'x 776 (9th Cir. 2011) ("[T]here is a substantial risk of erroneous deprivation through the procedures utilized by INS in rescinding asylum via a mailed letter. This manner of termination does not account for anything other than

post hoc notice that . . . he or she is no longer entitled to protection."); *A.R.*, 2026 WL 194850, at *7–8 (concluding that the government should have provided a "predeprivation hearing" and "a reason for the termination" of SIJS beneficiary's deferred action).

Third, the government's interest does not justify dispensing with minimal safeguards. Indeed, USCIS does provide advance notice and the opportunity to be heard before termination of other forms of DA. *See* 8 C.F.R. § 236.23(d)(1); *see also* Final Rule, Deferred Action for Childhood Arrivals, 87 Fed. Reg. 51352, 53245–46 (Aug. 30, 2022) ("DHS agrees with commenters that in most cases, there are good reasons to give DACA recipients adequate notice and an opportunity to respond prior to termination of their DACA. This approach will promote fairness and accuracy in the decisionmaking process for terminating a DACA grant. . . ."). In any event, although it may impose "some costs in time, effort, and expense" to provide pre-deprivation notice and an opportunity to be heard, "these rather ordinary costs cannot outweigh the constitutional right" to due process. *Fuentes v. Shevin*, 407 U.S. 67, 92 n.22 (1972); see also *A.R.*, 2026 WL 194850, at *8 ("Respondents have identified no sufficiently countervailing interest or burden in providing the procedures Petitioner seeks—which is simply a hearing on the termination of [SIJS] deferred action."). Respondents' argument that Mr. Padilla has no due process right in connection with his DA termination and EAD revocation, therefore, fails.

**V. Relief Requested**

Because Respondents' actions were unconstitutional and unlawful, the Court should vacate the revocations and put Mr. Padilla back in his pre-detention position: protected by deferred action and authorized to work, while he awaits adjudication of his application for permanent resident status.

/

Dated: August 3, 2026

Respectfully submitted,
Attorney for Petitioner,

/s/ Stephanie E.Y. Marzouk
Stephanie E.Y. Marzouk MA BBO#683291
Marzouk Law LLC
2464 Massachusetts Ave Ste 317
Cambridge, MA 02140
Tel: 617-674-2112
Email: sym@marzouklaw.com

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2026, I electronically filed the foregoing document in the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/*Stephanie E.Y. Marzouk*
Stephanie E.Y. Marzouk