UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSE LUIS PADILLA POSADAS, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. 26-cv-10276-ADB |
| PATRICIA H. HYDE, et al., | * | |
| Respondents. | * | |

**MEMORANDUM AND ORDER**
**ON MOTION FOR FURTHER RELIEF**

BURROUGHS, D.J.

Before the Court is Petitioner Jose Luis Padilla Posadas's ("Petitioner") Motion for Further Relief, [ECF No. 17 (the "Motion" or "Mot.")], in which he seeks an order reinstating his deferred action status and returning his work authorization, which were terminated upon his arrest relating to these proceedings. Respondents oppose, arguing, inter alia, that Petitioner's motion seeks relief unavailable in a habeas proceeding, that the Court is precluded from reviewing the government's decision to revoke Petitioner's deferred action, and that the revocation was lawful. [ECF No. 24 ("Resp.")]. For the following reasons, Petitioner's Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Petitioner is a twenty-two-year-old man from Honduras who entered the United States in 2021, at age seventeen. [Mot. at 2]. Soon thereafter, United States Immigration and Customs Enforcement ("ICE") issued him a Notice to Appear and commenced his removal proceedings.

[Id.]. In 2022, Petitioner applied for Special Immigrant Juvenile Status ("SIJS") with the United States Citizenship and Immigration Services ("USCIS"). [Id.]. On April 5, 2023, USCIS granted his petition and allowed him four years of deferred action. [Id. at 3]. This allowed Petitioner to work lawfully in the United States until a visa became available, at which point he could apply for lawful permanent resident status. [Id.].

On January 16, 2024, an immigration judge terminated Petitioner's removal proceedings based on Matter of Coronado Acevedo, 28 I&N Dec. 648 (AG 2022), because his "I-360 petition was approved and he was simply awaiting the opportunity to apply for permanent resident status." [Mot. at 3].

On January 22, 2026, ICE arrested and detained Petitioner at his job site in Maine. [Mot. at 3–4]. He and two others were arrested as part of ICE's "Operation Catch of the Day," though he was not the target of an arrest warrant. [ECF No. 11]. The officers informed him that his deferred action would be revoked and his work permit terminated. [Mot. at 4]. Shortly thereafter, USCIS sent a "Termination Notice" to Petitioner, informing him that his deferred action status had been revoked and that it intended to revoke his employment authorization. [ECF No. 17-5]. The notice did not provide any reason for the revocation other than asserting that USCIS had "exercised discretion" to do so. [Id.]. Shortly thereafter, on January 28, 2026, USCIS sent Petitioner a notice of its intent to revoke his employment authorization, stating as their basis that, "[o]ur records show that USCIS terminated your deferred action on 1/22/2026 and that you are no longer in a period of deferred action." [ECF No. 17-7].

Petitioner's renewed removal proceedings were terminated on March 23, 2026. [Mot. at 6]. On May 14, 2026, Petitioner became eligible to apply for a visa to become a lawful permanent resident and he filed for adjustment of his status accordingly. [Id. at 3]; [ECF No. 17-

2]. Despite these changes, on July 16, 2026, USCIS notified Petitioner that his employment authorization had in fact been revoked, and that the decision would become final "within 30 calendar days of the date of this letter (33 days if the decision was mailed)." [ECF No. 27-2].

### B. Procedural History

On January 22, 2026, Petitioner filed the instant habeas petition, [ECF No. 1], seeking release from detention or a bond hearing. This Court granted the petition, finding that Petitioner was entitled to a bond hearing under 8 U.S.C. § 1226(a). [ECF No. 8]. After the Court granted the Petition, but before his bond hearing, Petitioner filed an amended petition in which he raised additional arguments, contending that his detention was unlawful because the revocation of his deferred action status—which served as the purported basis for detaining him—violated his due process rights and the Administrative Procedure Act ("APA"). [ECF No. 9 ("Am. Pet.") at 18–19]. The Immigration Court held a bond hearing on February 5, 2026, and Petitioner was released on bond on February 10, 2026. [ECF No. 12]. He now seeks an order from this Court returning him to his pre-arrest status, namely, reinstating his deferred action and returning his authorization to work in the United States.

## II. DISCUSSION

### A. Preliminary Issues

#### 1. Availability of the Requested Relief in a Habeas Action

Respondents argue first that Petitioner is seeking relief unavailable in a habeas action, as the remedy he requests goes beyond release from confinement. [Resp. at 5]. Petitioner responds that the further relief he requests is appropriate because it seeks to abate a "collateral consequence" of the unlawful action upon which his detention was based. [ECF No. 27 ("Repl.") at 2–4]. The Court agrees with Petitioner.

Although "the traditional function of the writ [of habeas corpus] is to secure release from illegal custody," Preiser v. Rodriguez, 411 U.S. 475, 484 (1973), "immediate physical release [is not] the only remedy under the federal writ of habeas corpus," Trump v. J.G.G., 604 U.S. 670, 672 (2025) (alteration in original) (quoting Peyton v. Rowe, 391 U.S. 54, 67 (1968)). Rather, as long as a person meets the habeas statute's jurisdictional threshold of being in custody "at the time the petition [is] filed," Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)), he may pursue in a habeas proceeding "claims for relief [that] 'necessarily imply the invalidity' of [his] confinement," even if the instant remedy he seeks is not release, J.G.G., 604 U.S. at 672 (citing Nance v. Ward, 597 U.S. 159, 167 (2022)). Thus, when a person is released from custody after bringing a habeas petition, he may continue to proceed with claims challenging the decisions that underlay his previous detention, so long as he continues to experience some "collateral consequence" of those decisions. Leitao v. Reno, 311 F.3d 453, 455–56 (1st Cir. 2002) (citing Spencer, 523 U.S. at 7).

In that scenario, the Court may fashion other appropriate relief under the writ of habeas corpus to "erase the collateral consequences" of the unlawful conduct. Leitao, 311 F.3d at 456 (ordering that habeas petitioner be granted hearing for discretionary withholding from immigration removal); see also Velasco Lopez v. Decker, 978 F.3d 842, 855 (2d Cir. 2020) ("Habeas corpus . . . is an 'adaptable remedy,' the 'precise application and scope' of which changes 'depending upon the circumstances.'" (quoting Boumediene v. Bush, 553 U.S. 723, 779 (2008))).

Here, Petitioner's now-ended detention was a direct result of Respondents' termination of his deferred action status. While Petitioner was still in custody, he raised the illegality of that underlying termination as a basis for challenging his detention. [Am. Pet. ¶¶ 1–3]. Subsequently,

and on unrelated grounds, Petitioner was granted bond and is no longer in custody. [ECF No. 12]. Despite his release, however, Petitioner continues to experience "collateral consequences" as a result of the decision that led to his incarceration, Leitao, 311 F.3d at 455–56, including the inability to work legally, [Am. Pet. ¶ 87]. In this circumstance, and consistent with what other courts have done, Petitioner may continue his challenge to the government's decision to revoke his deferred action, and the Court has authority to fashion appropriate equitable relief, even though he is no longer in custody. See, e.g., Garcia Lanza v. Noem, 822 F. Supp. 3d 326, 332–34, 340 (E.D.N.Y. 2026) (vacating revocation of deferred action in habeas proceeding after Petitioner had been released); Alfaro v. Mullin, 831 F. Supp. 3d 177, 183–84, 187 (E.D.N.Y. 2026) (same), clarified on denial of reconsideration, No. 26-cv-00766, 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026); A.R. v. Noem, 25-cv-03565, 2026 WL 194850, at *5–6, *9 (C.D. Cal. Jan. 26, 2026) (granting preliminary injunction against revocation of deferred action in habeas proceeding).

Respondents rely heavily on Alawieh v. Tweedie, 808 F. Supp. 3d 205 (D. Mass. 2025), to argue that the relief Petitioner requests is not appropriate in a habeas proceeding. [Resp. at 5–6]. In Alawieh, however, the claims the court rejected were "new causes of action" which the petitioner asserted for the first time after she was released from custody, and the newly challenged conduct had never served as the basis for her detention. 808 F. Supp. 3d at 211–12. Here, by contrast, the decision Petitioner challenges now—termination of his deferred action status—is the same one that formed the basis for his earlier detention; he is simply seeking further relief to "erase the collateral consequences" of that decision. Leitao, 311 F.3d at 456. This case is therefore a far cry from Alawieh, where the petitioner simply tacked on an

essentially unrelated claim to a habeas petition post-release. Accordingly, the relief Petitioner seeks is proper in a habeas proceeding.

B. Jurisdiction Under 8 U.S.C. § 1252(g)

Respondents also contend that this Court is precluded under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(g), from reviewing the decision to terminate Petitioner's deferred action. [Resp. at 6–9]. Petitioner argues that Section 1252(g)'s jurisdictional bar on claims challenging removal proceedings or orders is inapposite to claims challenging the termination of deferred action. See [Rep. at 5–6]. The Court again agrees with Petitioner.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, Petitioner is seeking relief from the revocation of his deferred action status, not a decision to commence proceedings, adjudicate his case, or execute a removal order against him. Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (decision to revoke DACA, "a deferred action program with associated benefits, is not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order"); see Ruiz Primero v. Edlow, No. 25-cv-12752 (D. Mass. Mar. 25, 2026), ECF No. 20 ("The court remains unpersuaded that a decision to terminate deferred action status, even when viewed individually instead of on a programmatic scale, qualifies as a decision to commence proceedings, adjudicate cases, or execute removal orders."). Accordingly, the Court has subject matter jurisdiction.

C. Reviewability Under the APA

Respondents next argue that the Court cannot review Petitioner's challenge to the revocation of his deferred action status under the Administrative Procedure Act ("APA") because deferred action is simply a nonenforcement decision, and such decisions are "committed to agency discretion by law." [Resp. at 9 (quoting 5 U.S.C. § 701(a)(2))]. Petitioner responds that the regulatory process for granting deferred action to recipients of SIJS like Petitioner "involves clear standards against which to assess the agency's discretion" because it involves mandatory criteria and clear-cut forms of relief. [Repl. at 6–7]. Once again, Petitioner has the better argument.

The exception to judicial review of decisions "committed to agency discretion by law" applies only where "statutes are drawn in such broad terms that in a given case there is no law to apply," Heckler v. Chaney, 470 U.S. 821, 830 (1985) (quoting Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971)), or "no meaningful standard against which to judge the agency's exercise of discretion," id. Here, by contrast, SIJS deferred action is subject to a "standardized process," and applicants must "meet certain enumerated criteria, such as being under twenty-one and obtaining a state-court order committing them to the guardianship of a public or private entity." A.C.R. v. Noem, 809 F. Supp. 3d 103, 116–17 (E.D.N.Y. 2025). As the Supreme Court explained in Regents, a deferred action program like the one at issue here which involves "solicit[ing] applications," "institut[ing] a standardized review process," and engaging in an "affirmative act of approval" is "not simply a non-enforcement policy" fully within the agency's discretion, but rather a form of "affirmative immigration relief" that "provides a focus for judicial review." 591 U.S. at 18. Accordingly, the revocation of Petitioner's deferred action

status is subject to judicial review under the APA. See Sarmiento v. Perry, 824 F. Supp. 3d 514, 528–29 (E.D. Va. 2026) (reaching same conclusion).[1]

**B. Merits**

Having concluded that Petitioner's challenge to the revocation of his deferred action status is within the Court's jurisdiction, reviewable under the APA, and a proper subject of habeas relief, the Court turns now to the merits of Petitioner's claims.

Petitioner argues that the revocation of his deferred action status was unlawful on three grounds: first, that it violated his procedural due process rights under the Fifth Amendment, [Mot. at 8–10]; second, that it was arbitrary and capricious in violation of the APA, [id. at 10]; and third, that it is in violation of his Fourth Amendment right against unreasonable seizures because it arose out of a warrantless arrest, [id. at 11–12]. As explained below, the Court finds that Petitioner is entitled to his requested relief on the first two grounds asserted, and, consequently, does not address the third.

1. Due Process

Petitioner contends that he had a protectable property interest in his deferred action status, and that Respondents' decision to revoke that status without any sort of pre-deprivation process violated his due process rights. [Mot. at 8–10]. Respondents argue that Petitioner has no due process rights related to his deferred action status because it is a discretionary form of relief that does not create a constitutionally protected liberty or property interest. [Resp. at 12–13].

[1] Respondents also argue that the revocation of Petitioner's employment authorization was not "final agency action" reviewable under the APA because it allowed Petitioner to seek reconsideration. [Resp. at 11–12]. As Petitioner explains in reply, however, that revocation has since become final. [Repl. at 11]; [ECF No. 27-2 (July 16, 2026 revocation notice indicating that the "decision will become final" after 33 days)].

Contrary to Respondents' position, SIJS deferred action status is not so discretionary that it is exempt from the protections of the Due Process Clause. As explained above, SIJS deferred action status is a form of "affirmative immigration relief," Regents, 591 U.S. at 18, and "[i]t is USCIS policy that noncitizens 'with current deferred action based on their SIJ classification will generally retain this deferred action until the current validity periods expire,'" Garcia Lanza, 822 F. Supp. 3d at 336 (quoting USCIS Policy Alert, PA-2025-07, Special Immigrant Juvenile Classification and Deferred Action (June 6, 2025), www.uscis.gov/sites/default/files/ document/policy-manual-updates/20250606-SIJDeferredAction.pdf).

Accordingly, courts have repeatedly found that continuation of deferred action status is both a property interest and a liberty interest protectable under the Due Process Clause. A.R., 2026 WL 194850, at *5 ("[T]his Court finds that Petitioner could not have had his deferred action status revoked without due process."); Garcia Lanza, 822 F. Supp. 3d at 336 ("Plainly, the grant of SIJ status, deferred action and work authorization constitute important benefits such that revocation would constitute 'cognizable prejudice.'"); Alfaro, 831 F. Supp. 3d at 185 ("Respondents' post-arrest efforts to summarily revoke Petitioner's deferred action and work authorization violates his rights under statute, regulations and the Due Process clause."); Ramos-Lopez v. Bondi, No. 26-cv-01175, 2026 WL 1745700, at *7 (D. Md. June 17, 2026) ("[Petitioner] retains an especially significant private interest in maintaining both his SIJS and deferred action status"); Sarmiento, 824 F. Supp. 3d at 530("[O]nce someone such as [petitioner] [is] granted deferred action and SIJ status . . . he ha[s] a protected property and liberty interest under the due process clause."); Reyes Servin v. Semaia, No. 26-cv-02745, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) (collecting cases). Petitioner is therefore entitled to due process with respect to the revocation of his deferred action status.

The question becomes, then, whether Petitioner received such process. The Court finds that he did not. Respondents summarily revoked Petitioner's SIJS deferred action status with no pre-deprivation notice, no explained rationale, no pre-deprivation opportunity to be heard, and no opportunity to contest or appeal the revocation. [ECF No. 17-3 ¶ 10]; [ECF No. 17-5]. Respondents do not even argue that the process Petitioner received was adequate in the event the Due Process Clause applies. See generally [Resp.]. Whatever level of process is due in these circumstances, it exceeded what Petitioner received.

Courts have repeatedly found that such arbitrary and unexplained revocations of deferred action status—particularly those which, like Petitioner's, appear designed to serve as post-hoc justifications for detention—violate due process. A.R., 2026 WL 194850, at *5–6 (finding that due process entitled petitioner to "pre-deprivation procedural safeguards—namely notice and an opportunity to be heard on the termination of his deferred action status"); Garcia Lanza, 822 F. Supp. 3d at 336 ("[R]evoking a defined period of deferred action and work authorization following – and seemingly in an effort to justify – ICE's patently illegal arrest and detention of petitioner . . . [is] incompatible with Constitutional norms."); Alfaro, 831 F. Supp. 3d at 185 (similar); Ramos-Lopez, 2026 WL 1745700, at *7 ("[Petitioner] is entitled to retain the benefits of SIJS . . . unless and until he receives fair notice and opportunity to be heard on the propriety of revocation."); Sarmiento, 824 F. Supp. 3d at 530 (similar). Respondents' revocation of Petitioner's deferred action status was therefore in violation of his due process rights.

2. Arbitrary and Capricious

Petitioner further contends that the revocation of his deferred action status was arbitrary and capricious in violation of the APA. See [Mot. at 10]. Respondents argue that their revocation was justified because the government had withdrawn the policies under which

Petitioner was granted deferred action. [Resp. at 12]. Petitioner responds that Respondents' argument misrepresents existing USCIS policy, which states that existing SIJS deferred action recipients will "generally retain this deferred action." [Repl. at 10 (quoting Special Immigrant Juveniles, USCIS (last updated Apr. 16, 2026), https://www.uscis.gov/working-in-US/eb4/SIJ)].

Petitioner is again correct. Respondents did not revoke his deferred action status as part of a programmatic recission of deferred action for those who had previously received it. The government previously attempted such a programmatic recission but was stopped from doing so by court order, after which it adopted its current policy under which an individual with SIJS deferred action status "[w]ill generally retain this deferred action" unless "USCIS, in its discretion, . . . terminate[s] [his] grant of deferred action." Special Immigrant Juveniles, supra. Respondents therefore identify no changed circumstances affecting Petitioner's deferred action.

Viewing the record holistically, the Court finds that the revocation of Petitioner's deferred action status was plainly arbitrary and capricious. Although the Court's review under this standard is deferential, the government may not simply revoke a benefit Petitioner had relied upon for years with no explanation, no process, and no apparent consideration of reliance interests, based on circumstances that have not changed in any articulated way. See Garcia Lanza, 822 F. Supp. 3d at 338 ("[W]here the agency's only proffered justification for its [revocation] is that i[t] has discretion to do so, the conclusion that its action is arbitrary and capricious becomes inescapable."); Regents, 591 U.S. at 30 ("When an agency changes course . . . it must 'be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.'" (quoting Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 222 (2016))). That is particularly true where, as here, the agency's conduct appears contrary to its own existing policies. See F.C.C. v. Fox TV Stations, Inc., 556 U.S. 502, 515

(2009) ("An agency may not . . . depart from a prior policy sub silentio or simply disregard rules that are still on the books."); Garcia Lanza, 822 F. Supp. 3d at 335 (observing that unexplained revocation of preexisting deferred action status "contradict[ed] policies set by DHS"). Accordingly, the revocation of Petitioner's deferred actions status was unlawful under the APA.

## III. CONCLUSION

For the foregoing reasons, Petitioner's motion for further relief, [ECF No. 17], is **GRANTED**. The Court orders as follows:

1. The purported revocations of Petitioner's deferred action status and work authorization are **VACATED** and without force or effect;
2. Respondents are **ORDERED** to take any steps necessary to facilitate the reinstitution of Petitioner's deferred action status and employment authorization;
3. Any conditions of release imposed on Petitioner in connection with his earlier release on bond are **VACATED** and without force or effect, and any bond payment shall be returned to him;
4. Respondents are **ENJOINED** from re-detaining Petitioner or revoking his deferred action status or work authorization absent pre-deprivation notice and an opportunity to be heard on the termination;
5. Petitioner shall file any request for fees under the Equal Access to Justice Act within 30 days of this order.

The clerk is directed to enter supplemental judgment in favor of Petitioner.

**SO ORDERED.**

September 30, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE